311 So.2d 80 (1975)
Richard S. CALDWELL et al., Plaintiffs-Appellees,
v.
TRANS-GULF PETROLEUM CORPORATION et al., Defendants-Appellants,
Clarence Leslie Apple, Jr., et al., Defendants-Appellees.
No. 12566.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1975.
Rehearing Denied May 1, 1975.
Writ Granted June 20, 1975.
*81 James E. Franklin, Jr., Shreveport, for Trans-Gulf Petroleum Corp., and others.
A. C. David, Shreveport, for Paul M. Cochran, and others.
Schumacher, McGlinchey, Stafford & Mintz by Graham Stafford and Henri Wolbrette, III, New Orleans, for Richard S. Caldwell, and others, plaintiffs-appellees.
Jack D. Barnett, Shreveport, for Clarence L. Apple, Jr., defendant-appellee.
Before AYRES, PRICE and HALL, JJ.
En Banc. Rehearing Denied May 1, 1975.
PRICE, Judge.
Plaintiffs, Richard S. Caldwell and Nano John Turchi, filed this suit seeking the return of the purchase price of fractional non-producing interests in certain oil and gas leases and reasonable attorney's fees in connection with this litigation. Plaintiffs seek recovery under the provisions of the Louisiana Blue Sky Law (LRS. 51:701 et seq.) against Trans-Gulf Petroleum Corporation, Hugh M. Sneed and William J. Sneed, officers and directors of Trans-Gulf; Paul M. Cochran and Fred E. Fair, Sr., directors of Trans-Gulf; Miles L. Grisset, director of Trans-Gulf Corporation, and Clarence Lesley Apple, Jr.
Plaintiffs allege the fractional interests purchased are securities as defined by the statute and that neither the securities, the *82 salesmen, nor the prospectus were registered with the Commissioner of Securities of Louisiana as required by this law.
Defendants, Fair and Cochran, filed a peremptory exception of no cause or right of action, asserting they were inactive or nominal members of the Board of Directors of Trans-Gulf with no knowledge of the operations of the corporation and thus not individually liable in the absence of allegations of fraud. The record reflects this exception to have been argued, submitted and referred to trial on the merits.
Trans-Gulf, Hugh Sneed, William Sneed, and Apple filed an exception of no cause or right of action, combined with a motion for summary judgment in which they contend plaintiff has no remedy under the statute relied on as sales of mineral interests are not within the definition of "securities" as used in the statute; that in any event there were not more than ten sales of a mineral interest in a well to more than ten persons in the state in any period of twelve months, and the exemption of 51:705 exempts the transactions herein under consideration from the effect of the statute; that plaintiffs had constructive knowledge of the non-registry in these instances and may not bring suit because of the provisions of 51:715. This exception and motion for summary judgment was overruled.
Following extensive discovery proceedings, plaintiffs filed a motion for summary judgment, alleging that as shown by the answers to interrogatories, requests for admission of facts, affidavits and depositions, there are no genuine issues of material fact and they are entitled to judgment as prayed for as a matter of law.
The trial court, without written reasons, sustained this motion and rendered judgment in favor of plaintiffs as prayed for against Trans-Gulf, Hugh and William Sneed, Cochran and Fair, in solido. Defendant, Miles L. Grisset, was never served with process. Defendant, Clarence Apple, never filed an answer and was not cast in judgment. Neither are parties to this appeal.
On this appeal defendants primarily reurge the question of law regarding the intent of the "Blue Sky Law" to include within its definition of "securities" sales of fractional mineral interests. Additionally, all defendants contend the trial judge erred in concluding liability on the basis of a motion for summary judgment as they urge there are disputed issues of material fact which would absolve them from liability if resolved by a trial on the merits.
Defendants, Fair and Cochran, urge there is a genuine dispute of fact as to whether either of them had sufficient knowledge of the sales operation and non-compliance with registration requirements, or could have known of these matters by use of reasonable care. They additionally urge the provisions of the business corporation statute as to liabilities of directors (R.S. 12:94) controls their liability rather than the provisions of 51:701 et seq.
Trans-Gulf and the Sneed defendants, in addition to urging the inapplicability of the "Blue Sky Law" to the type of transactions involved, contend the trial court erred in concluding as a matter of law that defendants were not excluded from the application of the statute by the exemption provisions of Section 705.
These defendants contend that in any event the court could not assess the amount of attorney's fees on the basis of a disputed affidavit and in the absence of specific testimony in this regard.
We find no error in the judgment appealed from as it operates against Trans-Gulf and the Sneed defendants on the principal demand, but find a genuine issue of fact exists as to the question of statutory attorney's fees and the liability of Fair and Cochran for the reasons given hereafter.
The record as presently compiled shows Hugh M. Sneed and William J. Sneed, *83 who are President and Secretary respectively, own more than 50 percent of the capital stock of Trans-Gulf, which is a Louisiana corporation domiciled in Caddo Parish. The principal business of the corporation is the purchase and development of oil and gas leases within the State of Louisiana. During the period between August 3, 1970, and February 1, 1971, Trans-Gulf made sales of fractional working interests in four separate oil and gas ventures in DeSoto and Natchitoches Parishes to plaintiff, Richard L. Caldwell, for a total consideration of $9,460. Plaintiff, John Turchi, bought a fractional working interest in one of the ventures during the same period for the sum of $875. Both plaintiffs are architects residing in New Orleans. The transactions were for investment purposes and the total income to each from Trans-Gulf as of the filing of this action in April, 1972, was $105.59 to Caldwell and $21.47 to Turchi. The disputed sales were made by Clarence Apple, who was one of several salesmen engaged by Trans-Gulf to solicit investors to acquire working capital for the development of leases.
The remaining facts as established by the record will be discussed in conjunction with each specification of error as may become pertinent.

Application of Statute to Subject Transactions
The definition of a "security" as used in the statute is provided by Section 701(1) as follows:
"`Security' shall include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, warehouse receipt, certificate of interest or participation, or the right to subscribe to any of the foregoing, certificates of interest in a profit sharing agreement, certificate of deposit for a security, collateral trust certificate, pre-organization certificate, pre-organization subscription, voting trust certificate, any transferable share, investment contract, or beneficial interest in title to property, profits or earnings, or in general, any interest or instrument commonly known as a `security,' or any certificate of interest or participation in, temporary or interim bond, debenture, note, certificate, or receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. `Security' does not include any insurance or endowment policy or annuity contract fixed or variable, which is authorized to be written pursuant to Title 22 of the Louisiana Revised Statutes of 1950, as amended."
We consider the term "beneficial interest in title to property" as employed in the above quoted definition is sufficiently broad and intended to include these sales of fractional non-producing working interests in oil and gas leases. Although there apparently has been no reported Louisiana case deciding this exact question, we think the specific reference to mineral interests in the section defining an issuer mandates this conclusion.
In defining an "issuer" Section 701(5) reads as follows:
"Issuer' shall mean and include every person who proposes to issue, has issued or who shall hereafter issue any security. Any person who acts as a promoter for and on behalf of a corporation, trust or unincorporated association or partnership of any kind to be formed shall be deemed to be an issuer. With respect to interests in oil, gas or mineral leases, royalties, or servitudes, any person who shall divide any interest in any such security for the purpose of sale of fractional parts thereof to the public shall be deemed an issuer."
We therefore conclude the transactions herein involved are securities under the statute and are subject to its provisions unless otherwise excluded by exemptions set forth in the act.
*84 Are Transactions Exempt by Statute?
Trans-Gulf and the Sneed defendants argue there is a genuine issue of fact as to whether the transactions sued on by plaintiffs were exempt from the application of the "Blue Sky Law" by the provisions of Section 705(12) of the statute. This section has been amended on occasion by the legislature and the present provisions differ somewhat from those in effect at the time the subject transactions took place. Act 286 of 1968 which was in effect during the period material to this litigation amended Section 705(12) to provide as follows:
§ 705. Exempt transactions
(12) Any transaction pursuant to an offer directed by the offeror to not more than ten persons in this state during any period of twelve consecutive months, whether or not the offeror or any of the offerees is then present in this state, if:
(a) The seller reasonably believes that all buyers in this state are purchasing for investment, and;
(b) no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer in this state; but the commissioner may by rule or order, as to any security or transaction or any type of security or transaction, withdraw or further condition this exemption, or increase or decrease the number of offerees permitted, or waive the conditions in subparagraphs (a) and (b) with or without the substitution of a limitation on remuneration."
It may well be that a dispute exists as to whether ten or more people were solicited by Trans-Gulf through its salesmen within the State of Louisiana in a period of twelve consecutive months. However, we consider this immaterial because of the further requirement of sub-paragraph (b) under Section 705(12) that no commission or other remuneration be paid for soliciting a prospective buyer. In their depositions Hugh M. Sneed, President of Trans-Gulf, and Clarence Apple each testified a commission of ten percent was paid by the corporation to Apple for consummating the sale of a fractional interest in a drilling venture.
Defendants' contention seems to be that the salesmen were paid for selling the securities and not for soliciting prospective buyers and the provisions of sub-section (b) of 705(12) apply to solicitations only. This argument is not well taken. The act provides the exemption will exist only when no commission is paid either directly or indirectly. We find as a matter of law the commission paid on a sale is an indirect remuneration for the solicitation of a prospective buyer and the transactions involved were not exempt under Section 705(12).
Defendants also urge that neither plaintiff was solicited in this instance to invest in the securities. There is a dispute in this regard as shown by the matters in the record as it now stands. However, under the positive provisions of the statute it is immaterial whether plaintiffs were solicited or made the initial inquiry of defendant in regard to the purchase of the mineral interest as it is the offer or sale of unregistered securities that constitute the violation, not merely the solicitation. LRS. 51:715, subd. A(2) as amended by Act 69 of 1969.

Liability of Individual Defendants As Directors of Trans-Gulf
The record shows that no dispute exists in regard to the actions of Hugh M. Sneed and William J. Sneed which render them personally liable under the provisions of LRS. 51:715, subd. B, as amended by Act 69 of 1969, which in pertinent part reads as follows:
"715. Civil liabilities
A. Any person who: . . . . (2) Offers or sells any security . . .
B. Every person who directly or indirectly controls a seller liable under *85 Subsection (A), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable."
These two individuals were the principal officers of Trans-Gulf and admitted to attending all directors meetings and having full knowledge of all material facts surrounding the solicitations, sales and nonregistry of the securities involved.
The other defendants who are before us on this appeal, Fair and Cochran, present a two-fold argument. They primarily contend there is a genuine dispute of fact as to whether they had sufficient knowledge of all circumstances or could in the exercise of reasonable care have known of these facts to render them liable under the above cited provisions of the statute. Secondly, they contend their liability as directors should be determined under the business corporation act and not in accord with the Blue Sky Law. However, it is unnecessary for us to discuss the second contention in detail as we feel constrained to accept the primary argument of these two defendants.
Although Fair admits attending directors meetings and having some knowledge of the activities of the corporation in regard to sales of these securities, he denies knowing they were not registered. Cochran did not attend directors meetings and denies any knowledge which would bring him within the liability of Section 715.
We find the liability of these individuals should not be determined without a trial on the merits giving them the opportunity to present evidence to establish fully the extent of their knowledge and participation in the subject transactions. We find a genuine dispute of material fact does exist' as to their liability.

Effect of Knowledge by Purchaser of Non-Registration on Right to Recover
Defendants argue that the plaintiffs knew the securities which they bought were not registerd. From this alleged knowledge they infer that plaintiffs bought the securities with the intention of seeking the return of their investments if the wells were not lucrative, thereby avoiding the risk. However, under our interpretation of the law, even if the plaintiffs had such knowledge, it would not prohibit their recovery. In their arguments defendants rely on Section 715(F) of the Louisiana Blue Sky Law which reads:
"No person who has made or engaged in the performance of any contract in violation of any provision of this Act or any rule or order hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract."
We do not believe this provision of the Act has any applicability to the facts presented. Plaintiffs herein are seeking the return of funds they invested in illegally offered and sold securities. They are not seeking any right under a contract. Their rights did not derive from a contract, but derived from the law itself.
Further, if this provision of the Act were interpreted as defendants argue it should be, it would render the statute ineffective by allowing offerors of securities to avoid registration by merely disclosing the fact that they had not registered.

*86 Attorney's Fees

The trial court awarded plaintiffs the sum of $4,000 as attorney's fees in accord with Section 715, subd. A of the statute.
Defendants question the fixing of the amount by the court on a motion for summary judgment where the only evidence submitted was an affidavit by plaintiffs' counsel stating he had expended 150 hours in connection with this litigation. The referred to affidavit is not a part of the record before us.
Counter affidavits were filed by Trans-Gulf and the Sneed defendants denying this amount of time was spent by the attorney, or if it was so spent that it was necessary.
We do not question the authority of the trial court to fix reasonable attorney's fees in the absence of expert testimony and to establish the value of the services where the services are rendered under the eye of the court. Also, where the nature and extent of services are shown by the record, no expert testimony is necessary. See James, Robinson, Felts and Starnes v. Powell, 303 So.2d 229 (La.App.2nd Cir. 1974).
However, in the instant case defendants have disputed the extent of the services rendered by plaintiffs' counsel and we do not believe it can be said there is no genuine issue of material fact in this regard based on the record as now composed. Defendants should have the opportunity to offer evidence in rebuttal and to cross-examine plaintiffs' counsel in regard to the services rendered.
In recapitulation of our views expressed heretofore, we find the trial court's sustaining of the motion for summary judgment and awarding plaintiffs judgment against defendants, Trans-Gulf Petroleum Corporation, Hugh M. Sneed and William J. Sneed, for the return of the purchase price of the securities sold, plus interest, is correct, and that portion of the judgment is affirmed.
That portion of the judgment sustaining the motion for summary judgment against defendants Fred E. Fair, Sr., and Paul M. Cochran, and the determination of the amount of attorney's fees to which plaintiffs are entitled under the statute is in error and is reversed and set aside and the case is remanded for further proceedings consistent to the views expressed herein.
Taxation of costs shall await final determination of this matter.