HAWTHORNE, Justice.
 

 Defendant-appellant, Arkansas Louisiana Gas Company, has appealed from a judgment of the district court cancelling and decreeing null, void, and of no force and effect a certain oil and gas lease for insufficient development insofar as the lease applies to, and covers, 823.7 acres of a tract of land containing 1263 acres. The judgment leaves the lease in full force and effect as to 439.3 acres, upon which defendant owns and is operating two producing gas wells.
 

 On November 6, 1935, S. L. Carter executed an oil, gas, and mineral lease in favor of the Arkansas Louisiana Gas Company, which lease covered, among other lands, one large, continuous tract of 1263
 
 *1031
 
 acres. The lease was for a primary term of
 
 10 years
 
 and provided that it should remain in full force and effect as long thereafter as oil, gas, or other minerals were produced from the land. The property described in the lease is located in or near the Lake Bistineau gas field in Bienville Parish, Louisiana. Upon the execution of the lease, lessee paid unto lessor $2589, which amounted to $1.50 per acre for all the property described therein.
 

 During the primary term of the lease two producing gas wells were drilled, both of which are now producing in paying quantities. The first well was completed on May .10, 1940, and the second on May 3, 1941. No other wells have been drilled on the property.
 

 The lease provides that “In case of cancellation or termination of this lease for any cause, lessee shall have the right to retain under the terms hereof twenty-five acres of land around each well producing * * *, such tract to be designated by lessee in as near a square form as practicable.”
 

 The plaintiffs are Mrs. Maggie C. Carter and Mrs. Thyra V. David, the widow and surviving spouse in community and the only child and sole heir, respectively, of S. L. Carter, deceased, the original lessor. The owners of fractional mineral interests in the land described in the lease were made parties to the suit, some of whom have appeared and joined in the demands of plaintiffs.
 

 Plaintiffs pray for the cancellation of the. lease except, under the provision of the lease quoted hereinabove, as to 25 acres around each of the two producing gas wells. They contend that defendant has breached the obligation implied in the lease to develop the land for oil and gas reasonably and sufficiently and with reasonable diligence.
 

 Plaintiffs’ petition alleges that in the early part of 1946 they demanded of the lessee more extensive development and in default thereof demanded the cancellation of the lease except as to 25 acres around each of the two producing wells, but that the defendant has steadfastly refused to develop further or to surrender the property from the terms of the lease.
 

 Defendant-appellant admits plaintiffs’ demand . for additional drilling, but denies their allegations of insufficiency of development. On the trial it attempted to justify its failure to develop the property further by showing the existence of a main 'fault of some 360 feet displacement which traverses this tract of land in a line running in a slightly northwest-southeast direction, there being 439.3 acres south and west of the fault line, and 823.7 acres north and east thereof. The two wells drilled on the tract are situated on that portion of the property south and west of the fault line, on the up-throw side thereof. Defendant argues that the area on the down-throw side of the fault is outside the Lake Bistineau gas field, and that the drill
 
 *1033
 
 ing of wells on that portion of the tract would be a wildcat proposition, and was not necessary or required under the implied conditions of the lease to develop the property reasonably; that, under the implied obligation of the lease, defendant is not required to drill exploratory wells on the undeveloped portion of the tract lying north and east of the fault line and outside the proven Lake Bistineau field; or, in -other words, that the drilling of any additional wells on the property described in the lease would constitute
 
 exploration
 
 and not
 
 development.
 

 In the Lake Bistineau field, gas is produced from what is known as the Pettit horizon, and it is conceded that this horizon north and east of the principal fault is more than 300 feet deeper than it is to the south and west of the fault. This simply means that the Pettit horizon, from which gas is produced south and west of the fault, is found at a greater depth north and east of the fault.
 

 The producers in the Lake Bistineau field have allocated certain acreage to each well, and the amount of production therefrom is based on the proportionate acreage allocated to each well. With reference to the wells on plaintiffs’ tract, the allocation includes only the lands lying south and east of the main fault, containing 439.3 acres, and the production from these wells is based on this acreage, notwithstanding the fact that plaintiffs’ entire tract contains .1263 acres. Plaintiffs, not being parties to this agreement, of course are not bound .by it in any way.
 

 The record does not show that the Commissioner of Conservation has provided any rules or orders regulating the spacing of wells, fixing of allowables, pooling the land, etc., in this field, and, since the producers by voluntary agreement have allocated to each well the amount of gas to be taken therefrom, we can safely assume that no such orders or regulations have been issued.
 

 More than 90 days prior to the filing of the instant suit, plaintiffs made demand on the defendant for further development or for cancellation of the lease, which was refused, defendant taking the position that the property has been sufficiently developed. The record does not disclose that defendant has any present or future plans to develop this property further, and the evidence convinces us, as it did the trial court, that defendant has no intention of making any further development.
 

 The law of this state is well settled that the main consideration of a mineral lease" is the development of the leased premises for minerals, and that the lessee must develop with reasonable diligence or give up the contract; further, that as to what constitutes development and reasonable diligence on the part of the lessee must conform to, and be governed by, what is expected of persons of ordinary prudence under similar circumstances and conditions, having due regard for the interest"
 
 *1035
 
 of both contracting parties. Pipes v. Payne et al., 156 La. 791, 101 So. 144; Stubbs et al. v. Imperial Oil & Gas Co., 164 La. 689, 114 So. 595; Logan v. Tholl Oil Co., Inc., et al., 189 La. 645, 180 So. 473. See also Merrill, The Law Relating to Covenants Implied in Oil and Gas Leases, 2d Ed., sec. 122, p. 280, sec. 123, p. 284; 2 Summers, Oil and Gas, Perm.Ed., sec. 414, p. 370.
 

 In the leading case of Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801, 814, it was said:
 

 “ * * * Whether or not in any particular instance such [reasonable] diligence is exercised depends upon a variety of circumstances * * *. Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessor and lessee, is what is required. * * * ”
 

 Whether in any given case the lessee has sufficiently developed the leased property pursuant to the rule set out above, is a question of fact which must be resolved by a consideration of the facts and circumstances shown in the particular case. This is clearly shown by the statement of Mr. Justice Van Devanter, who was a circuit judge, in the case of Brewster v. Lanyon Zinc Co., supra, 140 F. at page 813, that there is “ * * * difficulty of laying down any cbmprehensive rule in respect of a question which is so largely one of fact that it must be resolved in each case according to its particular circumstances * *
 

 The instant case, to say the least, is unique in our jurisprudence, in that defendant to justify its refusal to develop further the leased premises relies on the existence of a fault which traverses the property, and on the testimony of two reputable and well qualified geologists, one of whom is in defendant’s employ, as to the effect of the fault with reference to production from the leased premises.
 

 These geologists do not in any way condemn the area of the leased premises lying north and east of the main fault, containing 823.7 acres, but the testimony given by one of them, which was most favorable to the defendant, is to the effect that the probabilities are against production, although this area might produce. All the testimony introduced both by plaintiffs and by defendant is to the effect that, according to the history of all such faults in proven oil and gas fields, production has been had on both the up-throw and the down-throw side thereof, with possibly one exception named by defendant’s geologist, that is, the Rodessa field. Plaintiffs’ expert testified that he knew of no instance where production was not obtained from both sides of such fault in a proven field.
 

 ’in
 
 the
 
 10 years or more
 
 during which this defendant has had the property under lease, including the primary term which expired on November 6, 1945, no effort has been made and no steps taken to develop the property in any way north and east of the main fault line, nor has defendant con
 
 *1037
 
 ducted geophysical work or made tests of any nature in an effort to ascertain whether production could be had therefrom. Defendant relies solely upon the mere existence of the fault and upon the advice of its geologist not to drill on the 823.7 acres.
 

 Plaintiff called as a witness a competent operator, who has been in the oil and gas business for. over 30 years, who has been thoroughly familiar with the Lake Bistineau gas field since 1916, who has drilled wells in this field, including the first deep well in the field, and by whose operation the well which revealed the existence of the fault was drilled. This operator has had seismograph and geophysical worlodone in the area, and testified that he was thoroughly familiar with all available data with reference to the possibility of producing oil or gas from the Carter tract, and that he would be willing to drill a well thereon provided he owned the lease, and that, if he owned a lease covering the Carter acreage, which is the “main piece of acreage north of the fault line”, he would join with others in the drilling of a well or would drill one himself.
 

 Our analysis of all the testimony convinces us that defendant herein has failed to develop sufficiently the 1263 acres covered by the lease, and that the drilling of only two gas wells which produce in paying quantities is not a reasonable development of this large tract, and that the reasons by which defendant attempts to justify its refusal to develop the property further are not adequate and sufficient, especially in view of the fact that another competent and well qualified producer is willing to drill to the north and east of the main fault line. In other words, defendant has violated the implied condition of the lease to develop the property prudently and reasonably.
 

 Although in the case of Fox Petroleum Co. et al. v. Booker et al., 123 Okl. 276, 253 P. 33, 38, the lease was cancelled on the theory of abandonment, what was said in that case regarding the implied obligation of the lessee to develop the premises is pertinent here:
 

 “The principle, as we understand it, is that development of every part of the lease is an implied condition. Therefore, whether the undeveloped portion be a single tract remote from the rest, or a considerable portion of a very large tract, * * * or the éast one hundred acres of a tract of 160, it is an implied condition that the lessee will test every part. * * * ”
 

 The case of Sauder et al. v. Mid-Continent Petroleum Corp., 292 U.S. 272, 54 S.Ct. 671, 674, 78 L.Ed. 1255, 93 A.L.R. 454 (rehearing denied 292 U.S. 613, 54 S.Ct. 856, 78 L.Ed. 1472), was a case in which a lessor, on the ground of insufficient development, brought suit for cancellation of an oil lease containing two adjacent tracts of 320 and 40 acres. Two wells were drilled on the 40-acre tract, but no development whatever occurred on the 320-
 
 *1039
 
 acre tract. In that case the court made the following observation, which we consider is applicable and pertinent to the instant case:
 

 “ * * * The justification for the respondent’s position is that the geologic data and the experience upon surrounding lands are both unfavorable to the discovery of oil or gas upon the east half of section 16 (the 320-acre tract). The respondent’s officers state that they desire to hold this tract because it may contain oil; but they assert that they have no' present intention of drilling at any time in the near or remote future. This attitude does not comport with the obligation to prosecute development with due regard to' the interests of the lessor. The production of oil on a small portion of the leased tract cannot justify the lessee’s holding the balance indefinitely and depriving the lessor, not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land.”
 

 In our opinion plaintiffs are entitled to the relief for which they prayed in their petition — that is, that the lease be cancelled except as to 25 acres around each producing well— but, since‘they did not appeal from the judgment which retained the lease in full force and effect as to 439.3 acres, or answer the appeal, we can afford them no further relief.
 

 Defendant-appellant contends that the decision of the district court had the effect of dividing the plaintiffs’ obligation under the lease or of making the lease divisible and of rewriting or remaking the contract. Under the very terms of the lease itself, if it should be terminated for any cause, the lessee is entitled to retain 25 acres around each producing well, and defendant certainly cannot now be heard to complain of the judgment of the lower court which allowed it to retain 439.3 acres.
 

 For the reasons assigned, the judgment appealed from is affirmed; defendant-appellant to pay all costs.
 

 O’NIELL, C. J., absent.