158 So.2d 460 (1963)
Grady Glynn SAULTERS, Plaintiff-Appellee,
v.
Sam SKLAR et al., Defendants-Appellants.
No. 10016.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1963.
Rehearing Denied December 6, 1963.
Writ Refused February 14, 1964.
*461 Shuey & Smith, Shreveport, for appellants.
Jackson & Reynolds and Meadors & Meadors, Homer, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
BOLIN, Judge.
From judgment in plaintiff's favor ordering the partial cancellation of a mineral lease for failure to develop same and ordering defendants to pay damages and attorney's fees, defendants appeal.
The case was submitted on an agreed stipulation of facts which we shall briefly set forth.
On October 12, 1949, G. T. Dawson et al., the then owners of 95 acres of land in Claiborne Parish, executed a mineral lease covering this land in favor of Leonard Phillips, which lease is now owned by appellants. On February 3, 1951, Dawson conveyed to plaintiff 23 acres of the property affected by the lease. A well was completed on the leased premises, though not on lands owned by plaintiff, on July 24, 1959 and has been a commercial producer since that date. By order of the Departent of Conservation dated October 5, 1959 this well was assigned to a unit consisting of the East Half of the Southeast Quarter (E ½ of SE ¼) of Section 22, Township 21 North, Range 5 West. The same conservation order established as drilling units the South Half of the Northwest Quarter (S ½ of NW ¼) of Section 23, in which lay 17 acres of plaintiff's land, and the East Half of the Northeast Quarter (E ½ of NE ¼) of Section 22, including 6 acres of plaintiff's land.
On January 7, 1960, plaintiff's attorney wrote a letter to defendants requesting either immediate release of his property from the mineral lease; reasonable development within 30 days after receipt of the letter; or release of the property in question and a new lease to be executed for $35 per acre. Failure to accede to one of these alternatives, according to the letter, would *462 result in litigation for cancellation. Receiving no answer to this letter, the attorney on April 2, 1960 wrote another letter wherein he demanded a release of plaintiff's property within 10 days. On April 15, 1960, defendant Sklar answered and refused to comply with plaintiff's demands, giving as the reason:
"We would prefer not to release that part of the Dawson lease which is not in production, since it may some day be used for a deep unit."
It is further shown defendants did not consider it reasonable or prudent to attempt any further development at this time.
On the dates plaintiff's demands were made, Saulters's twenty-three acres were in the two undeveloped units established by the conservation order and defendants had no other leased acreage in these units. Defendants, therefore, could not drill on plaintiff's lands since the drill sites specified by the Conservation Department fell on lands owned by others.
Until May 24, 1960, plaintiff had received no bona fide offer of a lease; however on that date he was offered a lease on his acreage located in the unit comprised of the South Half of Northwest Quarter (S ½ of NW ¼) of Section 23.
Within a week after receipt of this bona fide offer plaintiff filed suit for cancellation of the lease and within a week from the date suit was filed, defendants negotiated a sublease with F. E. Hargraves & Sons Drilling Company, Inc., owner of the leases affecting the permitted drill sites in the unit. This company drilled a well on the unit, which was not productive.
While no written reasons were assigned for the lower court's judgment granting plaintiff's request for cancellation of a part of the lease, it is conceded such ruling was based on a finding defendants had failed to develop sufficiently the leased acreage after appropriate demands. Defendants urged during the trial below and re-urge on this appeal, the following general and special defenses:
1. Plaintiffs failed to prove lessees under the mineral lease had breached their contractual duty to develop with due diligence the acreage.
2. Plaintiff, as one lessor and owner of only a part of land affected by the lease, cannot maintain an action to partially cancel the lease as it relates to his property.
3. Defendants were prevented from drilling and developing plaintiff's land by an order of the Department of Conservation.
As the basis of plaintiff's suit for cancellation of that portion of the lease outside the producing unit is defendants' failure to develop the lease reasonably, we shall first devote our attention to this contention.
Our law is clear that the main consideration of an oil and gas lease is the development of the leased premises for minerals; that the lessee must develop all the leased premises with reasonable diligence or give up the contract; and that due diligence is that which is expected of persons of ordinary prudence under similar circumstances, having due regard for the interest of both contracting parties. Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 36 So.2d 26 (1948) and numerous cases cited therein.
In his brief, plaintiff sets forth the following facts as constituting a prima facie case for a partial cancellation of the lease:
"1. Although the lease had a primary term of 10 years, no attempt was made to explore the leased premises until more than 9 ½ years of the primary term had elapsed.
"2. More than 10 months time elapsed between the date of completion of a well on the leased premises and the date of filing suit herein, during which time no attempt was made to drill an offset well.

*463 "3. A demand for further development was made almost 5 months before filing this suit.
"4. The only reply received to the demands was `We would prefer not to release that part of the Dawson lease which is not in production, since it may some day be used for a deep unit.'
"5. More than 2 weeks time elapsed between the date a well was completed as a producer in the N ½ of NW¼ of Section 23, and the date this suit was filed.
"6. More than a week before filing this suit plaintiff received a bona fide offer to lease his 17.88 acres located in the S ½ of NW ¼ of Section 23, which he could not accept because of defendants' refusal to execute a partial release.
"7. After this suit was filed, a well was drilled in September of 1960 on the S ½ of NW ¼ of Section 23, and on or before December 29, 1960, a location was staked and a permit issued for the drilling of a well to be located in the E ½ of NE ¼ of Section 22."
There is no evidence in the record that defendants' decision not to attempt any further development in the shallow sands on plaintiff's land was not a reasonable and justifiable decision on the part of the lessees. There was no testimony either geological or otherwise that anyone else considered it reasonable or prudent to conduct any further developments. As a matter of fact, a portion of the acreage in the drilling unit where plaintiff's land was located was not leased on the date of plaintiff's demands. It is also pertinent to point out the well finally drilled to the shallow sands in this unit was abandoned as a dry hole on October 19, 1960. Without reviewing the evidence in more detail, we find plaintiff has failed to bear the burden of proving defendants have not developed the leased premises with reasonable diligence.
Having concluded the lower court was in error in finding the defendants had failed to develop the leased premises reasonably, it is unnecessary to consider the other defenses urged by appellants.
For the reasons assigned the judgment appealed from is reversed and set aside at appellee's cost and we hereby reject plaintiff's demands to cancel that certain oil and gas lease dated October 12, 1949, and filed for record October 19, 1949 under Registry 183306 of the Records of Claiborne Parish, Louisiana, insofar as it affects the following described property:
A 6-acre tract of land described as commencing at the Southeast corner of SE/4 of NE/4 of Section 22, Township 21 North, Range 5 West, and running West 10.20 chains; thence North 5.88 chains; thence East 10.20 chains; thence South 5.88 chains to place of beginning, and a tract of land containing about 17 acres described as follows: W/2 of SW/4 of NW/4 of Section 23, Township 21 North, Range 5 West (less and except the tract containing about 1½ acres in the Northwest corner of said tract which belongs to Mrs. Julia Ford and Reagan Ford, and less and except a small tract in the Southeast corner of said tract which belongs to the Board of Trustees of the Methodist Episcopal Church South, described as follows: Beginning at the Southwest corner of J. T. Eppinger lot running 90 feet West along Homer-Bernice Highway No. 11, thence North 243 feet, thence East 90 feet; thence South 243 feet to starting point, containing one-half acre, more or less, all in Section 23, Township 21 North, Range 5 West), the tract conveyed containing in all about 23 acres, more or less, with all and singular the improvements thereon, Claiborne Parish, Louisiana.
Reversed.