315 So.2d 415 (1975)
Dalva LeJEUNE et al., Plaintiffs and Appellants,
v.
The SUPERIOR OIL COMPANY et al., Defendants and Appellees.
No. 5023.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1975.
Bernard E. Beyt, Lafayette, Saal & Saal by I. P. Saal, Jr., Gueydan, for plaintiffs-appellants.
*416 Liskow & Lewis by Robert T. Jorden, Lafayette, for defendants-appellees.
W. R. Jones, Willard B. Wagner, Jr., Superior Oil Co., Houston, Tex., for defendants-appellees.
Jere G. Hayes, General American Oil Co. of Texas, Dallas, Tex., for defendant-appellee.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
This case is consolidated with LeBlanc, et al. v. Superior Oil Company et al., 315 So.2d 418 in which a separate decision is being rendered by us this date. In each case the plaintiffs-lessors seek the cancellation of the non-unitized portions of their respective mineral leases for failure of the defendants-lessees to reasonably develop the non-unitized acreage. From an adverse judgment, plaintiffs appealed.
Essentially, plaintiffs contend the nonunitized portion of the lease should be canceled because defendants have failed to comply with their implied obligations to (1) develop and/or (2) to explore.
On the other hand, defendants contend: (1) The defendants were not obligated under the terms of the mineral leases here involved, to further develop the leased premises during the limited term for which Pugh clause rental payments could be made as to the non-unitized acreage. (2) If there was an obligation to further develop the land covered by said mineral leases, the operations conducted by the mineral lessees satisfied that obligation.
The general facts are as follows: The LeJeune lease was granted on February 16, 1970, covering about 295 acres. The LeBlanc lease was granted on September 18, 1969 covering about 320 adjacent acres. Both leases are located in the Southeast Gueydan Field.
Each lease is for a primary term of five years, and each contains a Pugh clause, allowing retention of acreage outside that included in any producing unit, by payment of annual rentals of $50 per acre outside the unit, for no longer than three years after the primary term.
In 1971 the Commissioner of Conservation issued orders, revised in 1973, placing 23.39 acres of the LeJeune lease and 40.72 acres of the LeBlanc lease in units established for wells on other lands producing gas and condensate from the Miogypsionoides Sand. Plaintiffs are still receiving their shares of the production from these wells.
It was stipulated that defendants have paid or tendered to plaintiffs all delay rentals due under the leases, including those due under the Pugh clause. Hence, there is no issue as to failure to pay rentals.
In September of 1973, plaintiffs made written demand that defendants further develop the leased acreage outside the Miogypsinoides Sand Units, or, in the alternative, release the outside acreage. Defendants refused, and this suit followed.
In their brief filed in this Court, the plaintiffs cite LSA-C.C. Article 2710 for the general rule that the lessee is bound "To enjoy the thing leased as a good administrator, according to the use which was intended by the lease." Plaintiffs then state that Louisiana jurisprudence construing this Code Article has established four obligations of the mineral lessee to act as a good administrator. The comment under LSA-R.S. 31:122 (the new Mineral Code) states these obligations as follows:
"In Louisiana, the general obligation to act as a `good administrator' or `prudent operator' has been clearly specified in four situations: (1) the obligation to develop known mineral producing formations in the manner of a reasonable, prudent operator; (2) the obligation to explore *417 and test all portions of the leased premises after discovery of minerals in paying quantities in the manner of a reasonable, prudent operator; (3) the obligation to protect the leased property against drainage by wells located on neighboring property in the manner of a reasonable, prudent operator; and (4) the obligation to produce and market minerals discovered and capable of production in paying quantities in the manner of a reasonable, prudent operator."
In the present case plaintiffs do not contend their property is being drained by wells located on neighboring property, nor do they contend there has been a failure to produce and market minerals. Hence, we are not concerned with obligations numbered 3 and 4 quoted above. We are concerned only with obligations numbered 1 and 2 quoted above.
In an effort to prove that defendants have failed (1) "to develop known mineral producing formations" and/or to (2) "explore and test all portions of the leased premises after discovery of minerals.", the plaintiffs introduced the testimony of W. C. Schmitz, an expert in the field of geology. Mr. Schmitz testified that he had made a careful study of the geology of the area and that there were several sands under the leases in question which were good prospects. He made no attempt to show that the Miogypsinoides Sand, the one from which gas and condensate are being produced by the wells whose units include portions of the LeJeune and LeBlanc leases, should be further developed or explored by additional wells on the non-unitized portions of the leases. His principal emphasis was on the Camerina No. 1 Sand, which is at a different depth. His theory is that from information gathered by the drilling of two or three wells on nearby property, there is a good prospect that a well drilled on the non-unitized portions of the leases in question could produce from the Camerina Sand No. 1. Schmitz conceded that there are no wells which are now producing from the Camerina 1 Sand, either on the leases in question or in the entire field. It is therefore not a "known mineral producing formation", within the meaning of the obligation of the lessee to develop. At best, it is a good prospect. Furthermore, there has been no discovery of minerals in this sand within the meaning of the obligation to explore.
Defendants introduced the testimony of Mr. Leon Comeaux, also an expert in the field of geology. Mr. Comeaux testified that The Superior Oil Company and its associates have approximately 6600 acres under lease in the Southeast Gueydan Field. Some of this acreage is being maintained by unit production, some is being held by delay rental payments during the primary terms, and some is non-unitized acreage being held by Pugh clause delay rental payments, as is the acreage here involved. He testified that the first well in this field was discovered in certain deep sands in 1965. Since that time, Superior has participated in the drilling of 19 wells in the field, an average of approximately two wells per year. Of the 19 wells, 7 were dry holes and 12 were actually completed, and at the present time 8 wells are producing from the field. As to the acreage in question here, Mr. Comeaux testified that although he considered it to be sufficiently prospective for the continuance of payments under the Pugh clause, there are no known producing formations under these leases. Any well drilled would be purely exploratory.
Under the evidence briefly outlined above, it is apparent plaintiffs have failed to prove that defendants have violated either the obligation to develop or the obligation to explore. There is no evidence of any known mineral producing formations under the non-unitized acreage, and, of course, there are no producing wells on the leased premises nor even in the entire field, from Camerina 1 Sand.
*418 In oral argument before this Court, counsel for plaintiffs conceded there is no Louisiana case which goes as far as they are asking us to go in this case, i. e., to extend the lessee's obligation to develop or to explore to a purely prospective test well. In Carter v. Arkansas-Louisiana Gas Company, 213 La. 1028, 36 So.2d 26 (1948) and all of the other cases cited by plaintiffs, there was first a discovery well and production in paying quantities from a known mineral producing formation before the courts required further development or exploration by the lessee.
Having concluded plaintiffs have failed to prove defendants had any obligation to further develop or explore, it is unnecessary for us to consider defendants' contention that payment of Pugh clause rentals relieved them of those obligations.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs appellants.
Affirmed.