478 So.2d 671 (1985)
Douglas H. ALLEN et al., Plaintiffs-Appellants,
v.
Ransom HORNE, Jr., Defendant-Appellee.
No. 17338-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1985.
*672 Charles B. Bice, Winnfield, for plaintiffs-appellants.
J.P. Mauffray, Jr., Jena, for defendant-appellee.
Before HALL, FRED W. JONES and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
The owners of some 22 acres in the Tullos-Urania Field in Winn Parish appealed a judgment rejecting their demands for partial cancellation of a mineral lease on the ground the lessee is not prudently developing the leased property. We affirm the judgment in favor of the lessee.
Appellants' three specifications of error are interrelated: the court erred in not accepting the testimony of their expert, hence the court committed error in finding that the lease was being prudently developed, and, finally, the court erred in not cancelling the lease and awarding attorney's fees and costs of litigation to appellants. We confine our analysis to the threshold issue of whether or not the leased property was being prudently developed. Our review of the record causes us to agree with the lower court and affirm its decision that the lessee is prudently developing the subject tract.
A mineral lessee is under a duty to develop and operate the leased property as a "reasonably prudent operator for the mutual benefit of himself and his lessor." La. R.S. 31:122. Whether the lessee has sufficiently developed the leased property is a question of fact which must be resolved by consideration of evidence in each individual case. Carter v. Arkansas La. Gas Co., 213 La. 1028, 36 So.2d 26 (1948). A lessee is required to give up the premises if he does not develop it with the diligence expected of a reasonably prudent operator under similar circumstances. Carter, supra.
The question of what is "reasonable development" is to be decided with reference to the following factors: geological data, number and location of wells drilled on the leased property and adjoining property, productive capacity of producing wells, costs of drilling operations as compared with profits, time interval between completion of the last well and the demand for additional operations, and the acreage involved in the disputed lease. Vetter v. Morrow, 361 So.2d 898 (La.App.2d Cir. 1978); Dawes v. Hale, 421 So.2d 1208 (La. App.2d Cir.1982).
In this case, lessors had the burden of proving by a preponderance of the evidence the grounds for cancellation of the lease. Cox v. Cardinal Drilling Co., 188 So.2d 667 (La.App.2d Cir.1966). In support of their allegations lessors presented by deposition expert testimony of LeDoux. LeDoux had made a study of the area, including spacing requirements, and concluded that an additional 14 wells could be drilled on each of the two oil sand fields without violating any spacing order and with "little or no effect" on the existing wells. He opined these new wells would each produce approximately two barrels of oil per day and have monthly expenses each of some $350. A figure of $40,000 was given as the average cost for drilling a new well in this area.
Horne's expert, Spradley, testified that the price for oil was approximately $34 per barrel in that area. At two barrels per *673 day a well yields some $2,040 per month gross. The Windfall Profits Tax is $25 per barrel and it is likely to cost over $500 per month to dispose of the salt water resulting from the pumping operation. In addition, pump repairs, utilities and office overhead could push the per month cost to over $600 per well. Spradley estimated it would take over five years to show a profit on a drilling investment of $40,000. The amount of oil in the field is finite and more wells would mean that each well would produce less oil. In his opinion, the Tullos-Urania Field is "grossly overdeveloped". Horne's second expert, McDonald, stated that LeDoux's estimate of a mere $350 per well per month for operating expenses including salt water disposal was unreasonably low. He believed one well in the area would drain five acres and that $40,000 for the drilling costs for a new well to produce only two barrels per day is neither efficient nor economic. He concluded that LeDoux is a geologist, not an economist, and that Horne was prudent with his "conservative" spacing of the wells.
The trial judge found seven producing wells and one salt water disposal well on the leased property. There was evidence that Horne was in the process of reopening some abandoned wells. Assuming there are only seven producing wells on these some 22 acres, this is more than adequate, according to expert McDonald, if one well will drain five acres.
In Frazier v. Justiss Mears Oil Co., 391 So.2d 485 (La.App.2d Cir.1980), writ denied, 395 So.2d 340, this court reversed a lower court judgment holding that lessee Mears was not prudently developing the leased property. Mears presented evidence [by expert testimony and results of drilling in nearby properties] that new wells would likely be dry. Drilling at a much deeper, unproven depth would cost more than $1,000,000 per well and the expert testimony was that 6000 acres would be needed to make test and production costs economically feasible. This court concluded that Mears was not in breach of his obligation to develop the leased property. Offers by others to lease a portion of the property, which did not include firm obligations to drill, were not sufficient to uphold the judgment for Frazier in the lower court.
Here, appellants argue that other independent drillers have offered to lease and drill, but there was no evidence of firm commitments. Such allegations alone are not sufficient grounds to reverse the judgment for Horne.
For these reasons we conclude that the trial judge correctly found the lessee Horne was acting as a reasonably prudent operator of the lease. Consequently, the judgment of the district court is affirmed, at appellants' cost.