MOORE, J.
L Questar Exploration <& Production Co. appeals a judgment that partially (as to “deep rights,” below the Hosston formation) dissolved a mineral lease on a finding that Questar failed to explore or develop the leased property with respect to Haynesville Shale and awarded the lessors attorney fees of $71,773.20. The lessors, Santo and Annie Ferrara, have answered the appeal, seeking additional attorney fees. The Louisiana Oil & Gas Association (“LOGA”) has filed an amicus curiae brief, aligning itself with Questar and seeking reversal. For the reasons expressed, we reverse and render.

Factual Background

The Ferraras own a 48-acre tract in DeSoto Parish. In November 1988, they granted an oil, gas and mineral lease to Long Oil Co. with a three-year term and the standard habendum clause.[1] In late 1988 and early 1989, Long Oil drilled two wells (Jones # 1 and Jones # 2), not on the leased premises but on lands unitized with it. These wells went to the Hosston and Glen Rose formations and have been in continuous production ever since. A well drilled on the leased premises (Ferrara # 1) in 1990 was a dry hole. Long Oil assigned its rights to Tide West Oil Co. in 1993.
In 1994, the Ferraras made a demand on Tide West for further exploration and/or development pursuant to the lease. As a result, Tide West granted a partial release of the lease, as to the Baker Lime formation, in 1995. Questar acquired Tide West’s rights by various assignments in 121999. In 2000, Questar drilled a well (Lillie Smith Alt. # 1) not on the leased premises but on land unitized with it. This well went into the Hosston formation and has been in continuous production ever since.
In short, there is currently no active well on the leased premises and no drilling has occurred since 1990, although the Fer-raras have received royalties of roughly $88,000 from three wells on unitized lands since 1989. According to Questar, the Ferraras made no further demands for exploration or development until 2008.
*978 In March 2008, however, things changed when Chesapeake Energy publicly announced the discovery of the Haynesville Shale formation[2] as a large and potentially profitable natural gas play. On August 18, 2008, the Commissioner of Conservation issued a memorandum recognizing that the Haynesville Shale zone “has been shown to be both laterally continuous and productive over an extensive area” and dispensing with the production test requirement for proposed units in the Haynesville Shale.
One week later, on August 25, 2008, the Ferraras sent a certified letter to Questar demanding that it release the lease below the Hosston formation or, alternatively, explore and develop the deeper zones, including the Cotton Valley and Haynesville Shale formations. Mr. Ferrara testified that the object of the letter was to “get the lease back” but he received no response of any kind from Questar. Questar concedes that it did not promptly act on the letter.
| ^Procedural History
Forty-six days later, on October 10, 2008, the Ferraras filed this suit demanding dissolution of the lease, damages and attorney fees; in the alternative, they demanded a partial release below the Hos-ston formation. Questar denied all claims.[3]
In discovery, the Ferraras stated they would call as an expert Homer H. Peel, an “independent landman specializing in database research and tracking spreadsheets.” Peel’s October 2009 report summarized data from the Department of Conservation’s Website, SONRIS, specifically how many wells were drilled in the Haynesville Shale and how many were drilled by Ques-tar. Questar filed a motion to exclude Peel’s testimony under La. C.E. art. 702 as he performed no independent research and drew no conclusions. Questar also filed a motion for summary judgment, urging that the Ferraras could not prove an unreasonable failure to explore. Questar attached a list of undisputed facts and a copy of Peel’s report, but offered no evidence of its own. The district court denied both of Questar’s motions.
The matter proceeded to trial over two days in May 2010. Only three witnesses testified. The elderly Mr. Ferrara and his son, Mark Ferrara, who assisted him in business matters, described the facts outlined above. They also testified that about six days before trial, they received a letter from Questar offering to develop a unit including the leased premises; Questar argued that this letter was actually from a separate entity, J-W Operating l4Co., with no connection to Questar, providing notice of intent to create a unit in the Haynesville Shale. The third witness was Peel, whom the court accepted as an expert in “compilation of public information on Haynesville Shale, obtained through the official Website of the Department of Conservation.” He testified that through the end of 2008, 150 wells had been permitted, drilled or completed in the nine-township area around the leased premises, and Questar had drilled 70 wells in the Haynesville Shale on property other than the Ferrar-as’. Questar raised frequent and strident objections to Peel’s expertise and contend *979 ed that under the “suspension doctrine,” evidence of exploration or development occurring after suit was filed was inadmissible; however, the court allowed Peel’s testimony.
With this evidence, the Ferraras rested their case. Questar moved for involuntary dismissal as to the claims for damages, attorney fees and the principal claim for breach of the implied duty to explore and develop. The court granted the motion with respect to damages only (a ruling not contested on appeal) but otherwise denied.
Questar then rested without presenting any evidence. The matter was submitted on post-trial briefs.

Action of the District Court

The court issued an 11-page written ruling, noting the “unique characteristics of the Haynesville Shale” and the fact that Questar provided no evidence in its casein-chief. The court rejected the suspension doctrine as an equitable remedy that predated the Mineral Code, and expressly relied on evidence of exploration activities that occurred after the Ferraras filed |fithis suit as proof of the lessee’s duty to explore. The court also found “significant evidence” that Questar was fully aware of the economic viability of the Haynesville Shale, and as a result “there are plans to drill wells in every section or every square mile.” However, Questar “presented no evidence of its intention to develop the subject property as to the Haynesville Shale,” and the court considered Questar’s conduct toward the Ferraras “troubling.” The court found that Questar “never had any intention to develop the plaintiffs’ deep rights,” and thus violated its statutory duty to “develop and operate the property leased as a reasonably prudent operator.” La. R.S. 81:122. The court dissolved the lease as to all depths below the Hosston formation. At a later hearing, the court awarded attorney fees and costs as itemized in counsel’s affidavit, $71,773.20.
Questar has appealed suspensively, assigning seven errors. LOGA has filed an amicus curiae brief, also seeking reversal. The Ferraras have answered, seeking additional attorney fees for defending the appeal.

Discussion: Allowance of Expert Testimony

By its fifth and sixth assignments of error, Questar urges the court abused its discretion in allowing Peel, who merely collected and summarized publicly available and unverified information from the Internet, to testify as an expert; and in admitting certain summaries and exhibits prepared by Peel that were not included in his expert report and not verified by him. Questar argues that Peel merely downloaded and displayed data from the Commission’s SONRIS Website in an effort to “launder” inadmissible hearsay into admissible expert testimony; that six exhibits (P-j22fi through 27) contained “new” information not included in his original report; and Peel made no effort to verify the SONRIS postings by checking the actual data files.
The Ferraras respond that the court did not abuse its discretion in accepting Peel as an expert, as he possessed “other specialized knowledge” that assisted the court; and the SONRIS data on which he relied fell under hearsay exceptions for public records and reports; tabulations, lists, directories or other published compilations; and general trustworthiness. The Ferrar-as also show that Questar specifically declined the court’s offer of a continuance to review the six contested exhibits, thereby waiving any objection.
If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or de *980 termine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise. La. C.E. art. 702. The admission of expert testimony is proper when: (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated by Daubert v. Merrell Dow Pharms. Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and (3) the testimony assists the trier of fact through the application of scientific, technical or specialized expertise. Cheairs v. State, 2003-0680 (La.12/3/03), 861 So.2d 536; Succession of Pardue, 40,177 (La.App. 2 Cir. 11/8/05), 915 So.2d 415, writ denied, 2006-0125 (La.4/28/06), 927 |7So.2d 284. The district court has broad discretion in determining whether to admit expert testimony. Walker v. Avondale Indus. Inc., 2009-0128 (La.1/28/09), 999 So.2d 735. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. La. C.E. art. 703; Wyatt v. Hendrix, 43,559 (La.App. 2 Cir. 11/5/08), 998 So.2d 233; Turner v. Lyons, 2003-0186 (La.App. 4 Cir. 1/28/04), 867 So.2d 13, writ denied, 2004-0741 (La.5/14/04), 872 So.2d 530.
At first blush, it might appear superfluous or redundant to admit expert testimony merely to summarize information available to the world on a public Website. However, the SONRIS statistics are fairly dense in their presentation and may not be easily grasped by a person unversed in oil and gas. Peel’s report, tables and testimony appear to make some sense out of a mountain of impenetrable data. Given the showing that Peel was indeed competent in his narrow field, and the district court’s wide discretion to regulate what kind of evidence might assist it in resolving the ultimate issue, we cannot say the court abused its discretion in accepting Peel as an expert and in admitting his report, tables and testimony. Walker v. Avondale Indus. Inc., supra. Moreover, the expert may utilize inadmissible data if it is of the sort normally used by experts in the field. La. C.E. art. 703; Wyatt v. Hendrix, supra; Turner v. Lyons, supra. There was no showing that experts (or laymen) seeking to plot trends in exploration and development in a | particular area or stratum would not use SONRIS data. Finally, Peel was subjected to extensive cross-examination, but Questar did not show a single instance in which SONRIS data was inaccurate. The district court did not abuse its discretion; these assignments lack merit.

Suspension Doctrine

By its second assignment of error, Ques-tar urges the court erred in considering and relying on evidence of post-suit activity in the Haynesville Shale formation by Questar and others to determine whether Questar breached its obligation. Specifically, the court refused to apply (a) the suspension doctrine, (b) the lease’s own suspension provision, and (c) the general rule that the plaintiff must prove its case. Questar identifies the suspension doctrine as the “well-settled” law that “a mineral lessor’s suit challenging the validity of a mineral lease relieves the lessee of its exploration and development obligations during the pendency of the suit.” Perkins v. Long-Bell Petr. Co., 227 La. 1044, 81 So.2d 389 (1955). Questar urges the suspension doctrine survived the 1974 enactment of *981 the Mineral Code, as a federal district court applied it in Noel v. Amoco Prod. Co., 826 F.Supp. 1000 (W.D.La.1993). Questar also cites the lease, ¶ 11, which allows the lessee to “suspend all payments without interest until there is a final adjudication or other determination of such dispute.” Finally, Questar urges that evidence of what it did after suit was filed was simply irrelevant to prove whether it breached an obligation before the suit.
The Ferraras respond that the district court has wide discretion in ruling on evi-dentiary questions and was within its discretion to consider |9conduct occurring after suit was filed. They contend that the suspension doctrine was an equitable rule dating from Leonard v. Busch-Everett Co., 139 La. 1099, 72 So. 749 (1916), but that it was preempted by the 1974 enactment of the Mineral Code. La. R.S. 31:2; La. C.C. art. 561, comment (a). They argue that at least two reported cases have allowed post-default evidence in a claim of failure to explore or develop. Rathborne Land Co. v. Ascent Energy Inc., 2008 WL 5427751 (E.D.La.2008), fn. 7, vacated on other grounds, 610 F.3d 249 (5 Cir.2010); Edmundson Bros. Partnership v. Montex Drilling Co., 1998-1564 (La.App. 3 Cir. 5/5/99), 731 So.2d 1049. Even if the concept somehow survived, they contend there was no equitable basis to apply it, as their suit did not prejudice Questar’s ability to explore. Finally, they dispute that the contractual suspension of ¶ 11 applies to this case.
The “suspension doctrine” was predicated both on former La. C.C. art. 792,[4] which suspended the prescription of nonuse when the owner of a dominant estate was prevented from exercising the servitude by an obstacle that he could neither prevent nor remove, and on equity. Perkins v. Long-Bell Petr. Co., supra; Baker v. Potter, 223 La. 274, 65 So.2d 598 (1953) (on rehearing). Notably, the operative document here is the Ferraras’ 1988 oil, gas and mineral lease, a contract regulated by the Mineral Code, La. R.S. 31:114, and not a mineral servitude. Moreover, equity applies only when “no rule for a particular situation can be derived from legislation or custom,” La. C.C. art. 4. Given these facts, the district court did not err in |10declining to apply the suspension doctrine.
Paragraph 11 of the lease provides, in pertinent part:
Should the right or interest of Lessee hereunder be disputed by Lessor, or any other person, the time covered by the pendency of such dispute shall not be counted against Lessee either as affecting the term of the lease or for any other purpose, and Lessee may suspend all payments without interest until there is a final adjudication or other determination of such dispute.
This passage entitles the lessee to suspend the running of time and payment of royalties until a final adjudication of a dispute, but it applies only when the lessor (or any other person) disputes “the right or interest of Lessee hereunder.” The Ferraras did not dispute Questar’s right or interest in the lease; rather, they acknowledged the lease and sought to dissolve it for Questar’s failure to act as a reasonably prudent operator. The district court did not err in declining to apply the contractual suspension provision.
“Relevant evidence” means evidence having any tendency to make the *982 existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. The district court has great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion. Medine v. Roniger, 2003-3436 (La.7/2/04), 879 So.2d 706; Fields v. Walpole Tire Serv., 45,206 (La.App. 2 Cir. 5/19/10), 37 So.3d 549, writ denied, 2010-1430 (La.10/1/10), 45 So.3d 1097. When evidence which is admissible for one purpose but not for another is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury ^accordingly. La. C.E. art. 105. In a bench trial, jury instructions obviously do not apply, leaving the district court wide discretion to consider admissible evidence for whatever purposes it deems necessary. Hager v. State, 2006-1557 (La.App. 1 Cir. 1/16/08), 978 So.2d 454, writs denied, 2008-0347, -0385 (La.4/18/08), 978 So.2d 349.
We agree with Questar that to prove whether a breach occurred as of the date of suit, evidence of subsequent events would be irrelevant and inadmissible. However, the district court also tried to infer Questar’s intent to explore or develop Haynesville Shale on or around the leased premises, and considered that evidence of post-suit activity would prove or negate such intent. Given the court’s exceptionally broad discretion in ruling on the admissibility of evidence, we cannot say this was plainly wrong. The fact that the evidence was not admissible to prove the initial breach did not prevent the court from admitting it and assigning it the proper weight. La. C.E. art. 105; Hager v. State, supra. The district court did not abuse its discretion; this assignment lacks merit.

Finding of Breach

By its first, third and fourth assignments of error, Questar urges the district court erred in finding that it breached its obligation to explore and/or develop the leased premises as a reasonably prudent operator and hence erred in canceling the lease. Cancellation is a harsh remedy that is rarely granted; the breach must be substantial to warrant dissolution. Rivers v. Sun Exploration & Prod. Co., 559 So.2d 963 (La.App. 2 Cir.1990); Taussig v. Goldking Properties Co., 495 So.2d 1008 (La.App. 3 Cir.1986). The 112Mineral Code, La. R.S. 31:122, requires the lessee to act as a “reasonably prudent operator” based on the totality of the facts, including the factors listed in Vetter v. Morrow, 361 So.2d 898 (La.App. 2 Cir.1978), deferring to the reasonable judgment of the lessee; Questar contends that the factors do not support the finding of a breach. Questar also argues that the mere failure to drill within a specified time does not imply a breach of the lessee’s obligation. Carter v. Arkansas La. Gas Co., 213 La. 1028, 36 So.2d 26 (1948). Further, the court improperly shifted the burden of proof with respect to the reasonableness of the lessee’s conduct from the plaintiffs to the lessee, an error that resulted in reversal of a judgment that canceled a lease in Frazier v. Justiss Mears Oil Co., 391 So.2d 485 (La.App. 2 Cir.), writ denied, 395 So.2d 340 (1980). Specifically, Questar contends the court erred in interpreting its failure to answer the Ferraras’ demand letter as a “persistent refusal” to develop the leased premises. Finally, Questar urges the court erred in fashioning a “Haynesville Shale exception” to the established principles of Louisiana law,[5] and concludes that *983 the facts closely resemble other cases which found no breach of the lessee’s obligation under R.S. 31:122. Saulters v. Sklar, 158 So.2d 460 (La.App. 2 Cir.1963), writ ref'd, 245 La. 638, 160 So.2d 227 (1964); LeJeune v. Superior Oil Co., 315 So.2d 415 (La.App. 3 Cir.1975); Frazier v. Justiss Mears Oil Co., supra.
The Ferraras respond that the court committed no manifest error, and in fact properly assessed the relevant factors and found a lack of prudent | 13development, as in Vetter v. Morrow, supra. They cite Questar’s news releases and shareholder reports as proof that the company was fully aware of the immense value of the Haynesville Shale, yet failed to do anything on the leased premises. They also submit that Questar failed to answer their demand letter, repeatedly delayed the trial, and then put on no case at all; given this total lack of evidence, the court was entitled to find a breach of R.S. 31:122.
The lessee’s obligation is defined in R.S. 31:122 as follows:
A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessee. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee.
The main consideration of a mineral lease is the development of the leased premises for minerals; the lessee must develop with reasonable diligence or give up the contract. Carter v. Arkansas-La. Gas Co., supra; Taussig v. Goldking Properties Co., supra. The lessee also owes the duty of further exploration after initial production in paying quantities has been obtained. Id.; LeJeune v. Superior Oil Co., supra. In determining a lessee’s compliance with R.S. 31:122, a court must consider the totality of the circumstances bearing on the lessee’s overall operations and measures taken for future development. Useful factors in this inquiry include (1) geological data, (2) number and location of wells drilled, (3) productive capacity of wells, (4) cost of drilling operations compared to profits, (5) time interval between completion of the last well and the demand for additional operations, and (6) acreage involved in the disputed lease. Vetter v. |14Morrow, supra; Allen v. Horne, 478 So.2d 671 (La.App. 2 Cir.1985).
In light of these factors, the record evidence simply does not support the district court’s conclusions. A persistent theme in the cases ordering cancellation of leases for failure to explore or develop is the presence of expert testimony that based on geological data, a prudent operator would drill a well on the subject property. Carter v. Arkansas La. Gas Co., supra; Vetter v. Morrow, supra; Morrison v. D & L Partnership, 499 So.2d 988 (La.App. 3 Cir.1986). The Ferraras’ expert, Peel, was not a geologist and did not purport to offer any opinion as to whether placing a new well on their property was prudent. In Saulters v. Sklar, supra, and Frazier v. Justiss Mears Oil Co., supra, the absence of expert testimony to this effect was fatal to the lessors’ claims. We certainly understand the district court’s sense of awe at the potential of the Haynesville Shale, but there is inadequate support for a blanket finding of “plans to drill wells in every section or every square mile.” More importantly, there was no *984 evidence that a prudent operator utilizing geological data would have drilled on the Ferraras’ property to the Haynesville Shale depth by the date of trial.
Through Peel, the Ferraras showed that 12 different operators had permitted, drilled or completed 150 wells to the Haynesville Shale formation in the nine-township area (324 square miles) around the leased premises. They also showed that Questar considered the Haynesville Shale a “world class asset” in which it had increased its acreage to 43,000 acres and drilled six straight wells with 24-hour peak rates of over 20 MMcfid. However, there was no evidence of the productive capacity of the other 11swells or the cost of drilling operations compared to profits.[6] In short, most of the critical evidence under Vetter v. Morrow, supra, is simply lacking.
The time frame is also significant. Since the Ferraras leased their property in 1988, a lessee drilled a dry hole on the premises in 1990, and in 1995 the Ferraras obtained a partial release of another lessee’s obligation to explore and develop the Baker Lime formation. In short, by the time of trial it had been almost 20 years since any exploration occurred on the leased premises. However, the Ferraras had received steady royalties from three wells, drilled to shallower formations on lands unitized with the leased premises. Chesapeake Energy announced the Haynesville Shale in March 2008, and the Commissioner dispensed with test wells on August 18, 2008. Exactly one week later the Ferraras wrote to Questar demanding a release from the lease below the Hosston formation; only in the alternative did they request exploration or development of these strata. Receiving no response, they filed this suit 46 days later.
Summarizing Louisiana’s jurisprudence regarding the obligation to explore Professor Thomas Harrell described the applicable time element as follows:
The burden of the lessor can be met by showing that there is reason to believe that diligent investigation of the leased premises might disclose the presence of potentially profitable oil and gas deposits and that the lessee refuses or has persistently failed to reasonably investigate such possibilities, even though it cannot be shown that a profitable well could be drilled or even that the results of the investigation would be favorable for development.
11fiThomas A. Harrell, “A Mineral Lessee’s Obligation to Explore Unproductive Portions of the Leased Premises in Louisiana,” 52 La. L.Rev. 387, 400 (1991) (emphasis added).
We completely understand the Ferraras’ (not to mention the district court’s) impatience and indignation at Questar’s inexplicable failure even to acknowledge the demand letter, its dilatory conduct after suit was filed, and its unhelpful strategy of putting on no evidence. However, the Ferraras received royalties from shallow strata continuously since 1988 and made no demand for further exploration or development since 1994. The instant demand came a mere one week after the Commissioner recognized the potential of the Haynesville Shale by dispensing with test wells; suit was filed only 46 days after the unanswered demand letter. The record is utterly devoid of evidence that any reasonably prudent operator could have begun exploration, much less drilled a well to the deep Haynesville Shale stratum, within this remarkably short time. The *985 evidence falls far short of proving that Questar persistently failed to reasonably investigate the leased premises for potentially profitable oil and gas deposits. Id., and citations therein.
The district court was plainly wrong to find that Questar never intended to develop the Ferraras’ deep rights. The record does not support a finding that Questar failed to act as a reasonably prudent operator for the mutual benefit of itself and its lessor as required by R.S. 31:122. While the evidence shows a dismaying degree of indifference on Questar’s part, it falls far short of satisfying the usual elements outlined in Vetter v. Morrow, supra, and the jurisprudence. These assignments of error have merit. The judgment partially canceling the mineral lease is reversed.
| ^Attorney fees
By its seventh assignment of error, Questar urges the district court erred in assessing attorney fees. It contends that under La. R.S. 31:207, attorney fees are allowed only if the lease is “extinguished or expired,” and that partial cancellation does not warrant attorney fees. Leaderbrand & Hardy v. Shallow Oil Co., 234 La. 796, 101 So.2d 673 (1958). The Ferraras respond that another provision of the Mineral Code, R.S. 31:209, authorizes attorney fees for “a demand for dissolution of a mineral lease for failure to comply with its obligations,” that Shallow Oil’s statement was merely dictum, and that other cases awarded attorney fees for a partial dissolution. Nunley v. Shell Oil Co., 229 La. 349, 86 So.2d 62 (1956); Goodrich v. Exxon Co. USA, 608 So.2d 1019 (La.App. 3 Cir.1992), writ denied, 614 So.2d 1241 (1993). By answer to appeal, they request an additional attorney fee of $15,000 for handling the appeal. Hollenshead Oil & Gas v. Gemini Explorations Inc., 45,389 (La.App. 2 Cir. 7/21/10), 44 So.3d 809, writ denied, 2010-2046 (La.11/12/10), 49 So.3d 892.
Attorney fees are not allowed except where authorized by contract or statute. Sher v. Lafayette Ins. Co., 2007-2441 (La.4/8/08), 988 So.2d 186; Hollenshead Oil & Gas v. Gemini Explorations, supra. The applicable statute is R.S. 31:209:
The right to secure damages and attorney’s fees under Article 207 is applicable also to a demand for dissolution of a mineral lease for failure to comply with its obligations.
Although the statute does not expressly refer to a successful demand for dissolution, we are aware of no authority to award attorney fees for an 118Sunsuccessful demand. Because we find that the Ferraras failed to prove their right to a dissolution or partial dissolution of the lease, we reverse the award of attorney fees and dismiss the claim for additional fees.

Conclusion

For the reasons expressed, the judgment is reversed and judgment is rendered dismissing the Ferraras’ claims at their cost.
REVERSED AND RENDERED.

. This provided, in ¶ 2, that in addition to the primary term, the lease would continue "as long thereafter as (1) oil, gas, sulphur or other mineral is produced from said land hereunder or from land pooled therewith; or (2) it is maintained in force in any other manner herein provided.”

. Chesapeake’s news release referred to it as a "new unconventional gas discovery” requiring wells 10,000 to 13,000 feet deep.

. ¶ 12 of the lease provides, “in the event the Lessor considers that operations are not being conducted in compliance with this contract, Lessee shall be notified in writing of the facts relied upon as constituting a breach hereof and Lessee shall have sixty (60) days after receipt of such notice to comply with the obligations!.]” However, because Questar filed no exception of prematurity, it waived its right to claim the full 60 days.

. The article has been reenacted as La. C.C. art. 755 and now suspends prescription for only 10 years. 1977 La. Acts No. 514.

. Questar also cites an unpublished writ grant in which this court rejected the same district court's finding that tire Haynesville Shale’s "quality and composition render it different *983 from ordinary minerals” and entered a summary judgment dismissing the plaintiffs' claim to rescind a mineral lease in DeSoto Parish. Thomas v. Long Petr. LLC, 46,051 (La.App. 2 Cir. 10/28/10) (unpublished writ grant).

. Questar’s teleconference report to shareholders on April 30, 2009, also stated that since the initial boom natural gas prices had dropped 40-50% and that the market was “oversupplied."