421 So.2d 1208 (1982)
William Gray DAWES and Beman Gates Dawes, III, Plaintiffs-Appellants,
v.
Frank HALE and Johnnie Upchurch Hale, Defendants-Appellees.
No. 15048-CA.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
*1209 Blanchard, Walker, O'Quin & Roberts by William Paul Lawrence, II and J. Jay Caraway, Shreveport, for plaintiffs-appellants.
Bodenheimer, Jones, Klotz & Simmons by David Klotz, Shreveport, for defendants-appellees.
Before PRICE, HALL and SEXTON, JJ.
HALL, Judge.
The plaintiffs brought suit to cancel a mineral lease affecting a 40-acre tract of land owned by plaintiffs for failure of the lessee to develop the leased property as a reasonably prudent operator as required by LSA-R.S. 31:122.[1] Plaintiffs alleged that although the lessee had drilled and was producing three shallow wells in the extreme northwest corner of the property which drained not more than one and one-half acres, the lessee had failed and refused to drill additional wells in order to fully develop all portions of the leased property after discovery of minerals in paying quantities in the manner of a reasonable, prudent operator, thereby entitling plaintiffs to cancellation of the lease.
The defendant lessee filed a motion for summary judgment contending that as a matter of law plaintiff is not entitled to cancellation of the lease because of the provisions of Paragraph 12 of the lease which provides that in case of cancellation or termination of the lease for any cause lessee shall have the right to retain around each producing well the number of acres allocated to each well under spacing and proration rules of the Commissioner of Conservation, or 40 acres around each well in the absence of such rules. Defendant lessee contends that this provision amounts to a stipulation by the parties of what shall constitute reasonably prudent conduct on the part of the lessee.
The district court sustained the motion for summary judgment, holding that the provisions of Paragraph 12 of the lease provide the remedy to resolve the bona fide dispute between the parties as to what constitutes reasonable development and should be enforced. From a judgment rejecting their demands, plaintiffs appealed. For reasons expressed in this opinion, we reverse, overrule the motion for summary judgment, and remand the case for further proceedings.
The record discloses the following facts which are not disputed. On June 10, 1974 the then owner of the 40-acre tract in question granted an oil, gas, and mineral lease to Joel B. Brown, covering the 40-acre tract and another noncontiguous 40-acre tract in north Caddo Parish. By act of assignment dated May 16, 1979 the original lessee conveyed the lease, insofar as it covers and affects the 40-acre tract in question, to Frank Hale, husband of Johnnie Upchurch Hale, defendants herein.[2] Prior to expiration *1210 of the five-year primary term of the lease, Hale commenced operations for the drilling of a well at a location 50 feet south of the north line and 50 feet east of the west line of the 40-acre tract and the well was completed on July 23, 1979, pumping two barrels of oil per day from the Nacatoch formation at approximately 1,000 feet. In October 1979 a second well was drilled at a location 50 feet south of the north line and 200 feet east of the west line of the 40-acre tract, was completed, and is pumping two barrels of oil per day from the Nacatoch formation. In January 1980 plaintiffs made demand upon defendant for further development. In April 1980 defendant drilled a third well located 20 feet from the north line and 15 from the west line of the 40-acre tract which well is located only 35 feet from the first well drilled and which well is also pumping two barrels of oil per day from the Nacatoch formation.
The Commissioner of Conservation has not issued any spacing or proration rules or orders fixing the number of acres allocated to the wells producing from the Nacatoch formation in the Pine Island Field of Caddo Parish located on the property involved in this case.
By act dated September 19, 1980 the original lessee, Brown, released the lease insofar as the lease covered and affected the other 40-acre tract originally included in the lease.
In July 1981 plaintiffs again made demand upon defendants for further development and for release of the lease, and upon defendants' refusal this suit was filed in August 1981.
It is alleged in plaintiffs' petition that the three wells drilled in the extreme northwest corner of the 40-acre tract only drain an area of approximately one and one-half acres. In connection with the motion for summary judgment this fact and the fact of failure to reasonably develop are not disputed or controverted by defendants, the position of defendants being that such facts are immaterial because, regardless of whether the property has been reasonably developed, defendants are entitled as a matter of law to retain the entire 40 acres now covered by the lease under Paragraph 12 of the lease. Paragraph 12 of the Bath's Louisiana Spec. 14-BR1-2A-PX 10-65 printed form lease provides:
"In case of cancellation or termination of this lease from any cause, Lessee shall have the right to retain, under the terms hereof, around each well producing, being worked on, or drilling hereunder, the number of acres in the form allocated to each such well under spacing and proration rules issued by the Commissioner of Conservation of the State of Louisiana, or any other State or Federal authority having control of such matters; or, in the absence of such rulings, forty (40) acres around each such well in as near a square form as practicable, and in the event Lessor considers that operations are not being conducted in compliance with this contract, Lessee shall be notified in writing of the facts relied upon as constituting a breach hereof and Lessee shall have sixty (60) days after receipt of such notice to comply with the obligations imposed by virtue of this instrument."
The narrow issue presented on appeal is whether the retained acreage provision of the printed form lease should be construed to preclude plaintiffs' claim that lessees have violated their statutory obligation to prudently develop the leased property.
Article 122 of the Mineral Code codifies the cardinal principle recognized early in the development of Louisiana mineral law that "the main consideration of a mineral lease is the development of the leased premises for minerals, and that the lessee must develop with reasonable diligence or give up the contract." Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 36 So.2d 26 (1948) and cases cited therein. Reasonable development as an implied covenant of every lease was established in spite of the fact that standard lease provisions contain no such requirement and, in fact, provide that the lease shall continue in effect so long as there is production in paying quantities.
*1211 The principle of reasonable development is a matter of public policy, necessary in order to give effect to the parties' intent inherent in all mineral leases, to assure reasonable development of the state's natural resources, and to prevent property being taken out of commerce.
As a matter of public policy the obligation of prudent development may not be contractually abrogated. LSA-R.S. 31:3 provides:
"Unless expressly or impliedly prohibited from doing so, individuals may renounce or modify what is established in their favor by the provisions of this Code if the renunciation or modification does not affect the rights of others and is not contrary to the public good."
As noted in the comment following Section 3, "freedom of contract ... is not unlimited under the Mineral Code. There are certain principles in the Louisiana mineral property system that are based on public policy.... Similarly, the requirement of Article 1901 of the Civil Code, repeated as to parties to mineral leases in Article 119 and 122 of the Mineral Code, that all agreements legally entered into be performed in good faith would seem to be one that cannot be contracted away on grounds of public policy."
Article 122 of the Mineral Code, after establishing the requirement of good faith development of the property as a prudent operator for the mutual benefit of lessee and lessor, provides that the parties "may stipulate what shall constitute reasonably prudent conduct on the part of the lessee." Although the obligation of good faith prudent development cannot be abrogated, it may be contractually defined by the parties.
The printed form acreage retention clause cannot reasonably be interpreted as an effort on the part of the parties to the lease to stipulate what shall constitute reasonable development of the leased property by the lessee. The clause is not so phrased. It would be illogical to believe that the parties to the lease intended to agree that the drilling of one, or three, shallow wells in one extreme corner of the 40-acre tract, draining an area of one and one-half acres, would constitute prudent development of all the leased acreage to its fullest extent.
Any clause purporting to limit a primary obligation of the lease should be carefully examined to determine if the parties clearly intended such a result. In Hutchinson v. Atlas Oil Co., 148 La. 540, 87 So. 265 (1921), the court stated:
"In our opinion it would require a very clear and unmistakable contract to support the proposition that a lessee could, after discovering any mineral in paying quantities decline to explore further, refuse to pay any further consideration, and fail to market that which had been found indefinitely and at his pleasure. Such a situation would be, to say the least, contrary to principles of equity, to say nothing of a wholesome public policy which frowns upon such putting of property out of commerce."
In Williams v. Humble Oil & Refining Company, 432 F.2d 165 (5th Cir.1970),
"It would require a clear and unequivocal clause in a lease to convince the court that the lessor intended to sacrifice that basic obligation [to act as a good administrator] owed him by his lessee."
In the instant case, the acreage retention clause reflects no clear, unmistakable, unequivocal intent to limit or define the development obligation of the lessee.
In Melancon v. Texas Company, 230 La. 593, 89 So.2d 135 (1956), a mineral lease was canceled in its entirety for failure to pay production royalties in spite of the fact that the lease contained an acreage retention clause substantially identical to the clause under consideration here. Faced with a clash between a bad faith violation of the lessee's obligation under the lease to pay royalties from a producing well and a provision of the lease allowing the lessee to retain acreage around the well in the event of cancellation, the court adopted an interpretation of the clause consistent with logic and reason, leading to no absurd consequences, and giving to the provisions of the *1212 lease a sense that results from the entire contract. LSA-C.C. Arts. 1945, 1955. Although the court in the Melancon case held that the acreage retention clause applied only in the case of a bona fide dispute contemplated in another clause of the lease which is not contained in the lease under consideration here, the essence of the opinion was the refusal of the court to allow the acreage retention clause to, in effect, nullify another clause embodying a primary obligation of the lease.
Applying the rationale of the Melancon case and the cited Civil Code articles to the instant case, we cannot construe the acreage retainage clause so as to abrogate the obligation of prudent development and thereby allow the lessee to retain under the lease the very same acreage he is alleged to have failed to prudently develop, a fact that, at this stage of the litigation, the lessee does not dispute, bona fide or otherwise.
When read in view of the statutory, implied obligation of prudent development, the acreage retention clause can be given effect only to the extent that the lessee has complied with his duty to act as a prudent operator, that is, only to the extent of the acreage that has been prudently developed. Because the 40-acre retention provision in this case at this point in time covers the entire leased property, any interpretation other than that suggested here would force us to effectuate a lease in its entirety while ignoring the primary cause and consideration for its execution. The retained acreage provision cannot be enforced to preclude a determination of whether the leased property has been prudently developed.
The case will be remanded for further proceedings in accordance with law. The question of reasonable development is a factual issue peculiar to each case which must be decided in light of, among others, the following factors: geological data; number of wells drilled; production capacity of producing wells; cost of drilling as opposed to profit; time between completion of the last well and demand for new operations; and acreage involved. Vetter v. Morrow, 361 So.2d 898 (La.App. 2d Cir. 1978). If it is determined that the obligations of the lease have been violated by the lessee, plaintiffs shall be entitled to any appropriate relief provided by law. LSA-R.S. 31:134. If dissolution of the lease is appropriate, it should in this case, giving effect to the retained acreage clause to the extent prescribed above, be partial, applicable only to that portion of the land which has not been prudently developed, allowing the lessee to retain that portion which has been prudently developed. LSA-R.S. 31:142.
The judgment of the district court is reversed and set aside, the motion for summary judgment is denied, and the case is remanded to the district court for further proceedings in accordance with law. Costs of the appeal are assessed to the defendants-appellees; the assessment of all other costs to await final determination of the action.
Reversed and remanded.
NOTES
[1] LSA-R.S. 31:122

"A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee."
[2] The "assignment" provides that the lease assigned may be maintained by production or otherwise after one year from date of the assignment only as to all strata lying 100 feet below the deepest depth drilled on the lease within one year from date of the assignment. Under this clause it appears that defendant Hale is only claiming rights down to 100 feet below the depth of the three wells drilled on the 40-acre tract. The original lessee was not made a party to this suit.