545 So.2d 1216 (1989)
MENOAH PETROLEUM, INC., Plaintiff/Appellant,
v.
Mrs. Willie J. McKINNEY, Defendant/Appellee.
No. 20538-CA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
*1217 J. Michael Rhymes, William H. Hallack, Monroe, for plaintiff/appellant.
Campbell, Campbell & Johnson by John T. Campbell, Minden, for defendant/appellee.
Before NORRIS and HIGHTOWER, JJ., and JASPER E. JONES, J. Pro Tem.
JASPER E. JONES, Judge Pro Tem.
Plaintiff, Menoah Petroleum, Inc., filed a petition for the issuance of a temporary *1218 restraining order and for a permanent injunction prohibiting defendant, Mrs. Willie J. McKinney, from blocking plaintiff's access to a well not located on defendant's property, but located on property covered by a lease owned by plaintiff which lease included defendant's property. The temporary restraining order was issued, and a hearing was held to determine whether the temporary restraining order should be converted into a permanent injunction. After the hearing, the trial court found that (1) plaintiff did not have a right of ingress and egress across defendant's property pursuant to the lease because the lease failed to produce oil, gas or other minerals in paying quantities in 1986, and (2) there was no production in March and April of 1987 which caused the lease to terminate due to nonproduction. The court rendered judgment dissolving the temporary restraining order, denying plaintiff's petition for permanent injunction, awarding $1,000.00 damages for the wrongful issuance of the temporary restraining order, and awarding $2,500.00 in attorney's fees.
Plaintiff appealed raising the following assignments of error:
1) The trial court erred in placing the burden of proof upon it to prove the validity of an oil and gas lease which produced during and after expiration of the primary term;
2) The trial court erred in finding that the wells within the lease failed to produce oil, gas, or other minerals in paying quantities in 1986;
3) The trial court erred when it found that a lapse in production in excess of sixty (60) days caused the lease to lapse;
4) The trial court erred in assessing damages for the wrongful issuance of the temporary restraining order; and
5) The trial court erred in awarding excessive attorney's fees.
For the reasons which follow, we affirm the judgment below.
On March 19, 1937, Olive Goodwill Roberts granted a mineral lease (Kennon lease) to Robert F. Kennon covering approximately 950 acres which included the property owned by defendant. The lease had a primary term of ten (10) years and for as long thereafter as oil, gas, or other minerals were produced. The lease further provided that after the discovery of oil or gas and after the primary term, if production ceased due to any cause, the lease would not terminate if the lessee commenced additional drilling or re-working operations within sixty (60) days after production ceased.
Three wells, beginning with the O.G. Roberts No. 1 Well, were initially drilled on the property. There was production from the leased property prior to expiration of the primary term. This production was still continuing when the State of Louisiana, Department of Conservation, issued Order No. 104-11 forming the North Shongaloo Red Rock Pettit Lime Production Unit in 1961. The unit was composed of over 4,000 acres and was established as a water flood production unit. The Kennon lease and various other individual leases and agreements were amended by the unit agreement to make them conform to the terms and provisions of the unit agreement. Several different operators managed the unit from 1961 through 1987. Unit production continually declined from a total production of over 27,000 barrels of oil in 1979 to a low of less than 7,000 barrels in 1986.
On July 23, 1987, the State of Louisiana, Office of Conservation, issued Order No. 104-11-A dissolving the unit effective July 7, 1987. The Commission dissolved the unit for (1) the operator's failure to file the required monthly reports; (2) abandonment of the secondary recovery process; (3) failure to manage the unit for waste prevention; and (4) failure of the operator to protect the rights of the parties in the unit. The Commission found that continued operation of the unit was no longer in the best interest of conservation.
The Kennon lease was transferred several times throughout the years by a series of assignments. In 1986, Highland Operating Company, Inc., operated the unit for the bankruptcy trustee since some of the current owners had filed bankruptcy. Plaintiff acquired its interests in the leases *1219 formerly within the unit from sales authorized by the bankruptcy trustee in 1987 and from other sources.
After dissolution of the unit plaintiff did not have access over the road which originally serviced the Roberts' well while the unit was in existence because this road crossed property not located within the Kennon lease which had been acquired by plaintiff. Plaintiff, who was unaware that defendant's property was included in the Kennon lease, began negotiating with defendant to acquire a right-of-way over her property. After receiving verbal approval of a right-of-way from defendant's brother, Buddy Lee, plaintiff began building a road utilizing portions of a pre-existing road. Defendant subsequently decided not to grant plaintiff a right-of-way over her property and blocked plaintiff's access to the well.
On September 29, 1987, plaintiff filed a petition for the issuance of a temporary restraining order and for a permanent injunction prohibiting defendant from denying it access to the O.G. Roberts No. 1 Well. Plaintiff contended it was entitled to the right-of-way to the Roberts' well pursuant to the terms of the Kennon lease. The temporary restraining order was issued, and a hearing was held to determine whether the order should be converted into a permanent injunction. The trial court placed the burden of proof upon plaintiff to prove that it had a valid lease. The court found that in 1986 the unit had total operating expenses totaling $118,185.74 and total production revenue of $69,849.59. The court noted the decrease in unit production from 1979 through 1986. The court found that plaintiff had not shown that there was production in paying quantities under the lease in 1986. The court further found that since there was no production from the wells on the lease during the months of March and April, 1987, the lease terminated due to nonproduction since more than sixty (60) days of nonproduction had occurred. The court dissolved the temporary restraining order, denied plaintiff's petition for permanent injunction, and awarded damages and attorney's fees in favor of defendant. Plaintiff appealed.
Plaintiff, citing Frazier v. Justiss Mears Oil Company, Inc., 391 So.2d 485 (La.App. 2d Cir.1980), writ denied, 395 So.2d 340 (La.1980), contends that the trial court erred when it placed the burden of proving the validity of the mineral lease upon it. It argues that normally the burden of proving the lapse of an oil, gas or mineral lease is upon the lessor. Defendant contends that according to Webb v. Hardage Corporation, 471 So.2d 889 (La.App. 2d Cir.1985), the lessee has the burden of proving the existence of a viable lease when the lessee claims that its rights of ingress and egress across defendant's property are derived from a lease that the lessee alleges burdens defendant's property.
Defendant's reliance upon Webb is misplaced. The general rule is that the party attacking the validity of a mineral lease, recorded and on the face of the public records, has the burden of proving the lease's invalidity. Frazier v. Justiss Mears Oil Company, supra; Cox v. Cardinal Drilling Company, 188 So.2d 667 (La.App. 2d Cir.1966). In Webb we recognized the general rule but held that before a lessee may rely upon it a lessee must prove by a preponderance of the evidence that prior to the expiration of the primary term or a continuous drilling operations term, a well was completed and surface tested to the extent that the well was capable of producing in paying quantities.
Webb involved circumstances where the lessee did minimal surface testing of gas wells on the leased premises prior to expiration of the leases' primary terms and the wells were shut in for lack of a market. The initial potential test required by the State Office of Conservation was not performed. The shutting-in of the gas wells on the leased properties could only extend the leases beyond their primary terms if the wells were capable of producing in paying quantities.
In the instant case, there is no question that there was production from the Kennon lease prior to expiration of the primary term. The lease was recorded and third parties were placed on notice as to the *1220 lease's effect upon the property encompassed within the lease. Although defendant does not seek cancellation of the lease, defendant's main defense to plaintiff's claim of ingress and egress across her property is that plaintiff's lease lapsed due to failure to produce in paying quantities after the primary term expired. Under these circumstances, the exception pronounced in Webb is inapplicable, and the general rule should be applied. Accordingly, the burden of proof was upon defendant to show that the lease affecting her property had lapsed due to failure to produce in paying quantities after expiration of the primary term.
Finding that the trial court improperly placed the burden of proof upon plaintiff, we must now determine whether defendant proved that plaintiff's lease lapsed due to failure to produce in paying quantities in 1986.
Production of minerals from a unit is tantamount to production from all lands within the unit. Landry v. Flaitz, 245 La. 223, 157 So.2d 892 (1963); LeBlanc v. Danciger, 218 La. 463, 49 So.2d 855 (1950); Hunter Company v. Shell Oil Company, 211 La. 893, 31 So.2d 10 (1947). Not only must there be actual production of minerals to maintain the lease beyond the primary term under the habendum clause, but that production must be in paying quantities. LSA-R.S. 31:124; Landry v. Flaitz, supra. To determine whether a well within a unit is producing in paying quantities unit production income and expenses should be analyzed. Knight v. Blackwell Oil & Gas Co., 197 La. 237, 1 So.2d 89 (1941); Vance v. Hurley, 215 La. 805, 41 So.2d 724 (1949). Implicit in the term "paying quantities" is the requirement that the lessee show a profit. Production income must exceed operating expenses. Vance v. Hurley, supra; Knight v. Blackwell Oil & Gas Co., supra; 2 Kuntz, The Law of Oil & Gas, § 26.7(v) (1964).
Production is considered to be in paying quantities when the production allocable to the total original right of the lessee to share in production under the lease is sufficient to induce a reasonably prudent operator to continue production in an effort to secure a return on his investment or to minimize any loss. LSA-R.S. 31:124.
Plaintiff contends that the trial court erred when it found that unit production revenue totaled only $69,849.59 while unit operation expenses totaled $118,185.74 in 1986. Plaintiff states that the unit actually produced $106,000.00 in revenue and had approximately $91,000.00 in operating expenses.
Our review of the 1986 production records establishes that the trial court erred when it calculated the total income produced by the unit in 1986. The court failed to take into account the oil produced and the price received for the oil in January. This error does not change the result because after considering the January 1986 production we still conclude that the unit failed to produce in paying quantities in 1986.
The trial court utilized the reports filed by the defendant, not objected to by the plaintiff, to determine the profitability of the unit in 1986. The court used the bankruptcy trustee's report which contained the income received by the trustee in 1986 to operate the unit to calculate the unit production revenue during that period. The court utilized the operating expense report filed by Highland Operating Company, Inc., the operator in 1986, and the bankruptcy trustee's report testified to by plaintiff's president to calculate the unit operation expenses.
Plaintiff filed into evidence computer printouts prepared by it utilizing the same data relied upon by the trial court. Plaintiff's expenses of production report is general, does not indicate how or where expenditures were made to operate the unit, and does not include administrative costs. The operating expense report filed by defendant is a more accurate reflection of the unit expenses since the report contains the actual charges billed by the operator in 1986. The trial court's reliance upon the operator's report to calculate total unit expenses was not error.
*1221 Plaintiff's income production report results from the multiplication of the average price of oil during each month in 1986 times the total barrels of oil produced. Plaintiff does not adjust his report to compensate for severance taxes or marketing costs. The bankruptcy trustee's report contained the actual price received by the trustee in 1986 for the barrels of oil sold less adjustments for severance taxes and marketing costs.[1]
Our independent analysis reveals that the trustee's report, relied upon by the trial court, does not contain the price received for the barrels of oil sold in January of 1986. One thousand two hundred fifty-four (1,254) barrels of oil were sold in January. According to the trustee's report he received between $12.46 and $17.87 per barrel of oil in 1986. Plaintiff's exhibit indicates that the price of oil was $26 per barrel in January. Utilizing plaintiff's high figure of $26 per barrel for January oil and adjusting it for severance taxes we conclude that when the January oil is added to the trustee's report utilized by the trial court the unit produced no more than $96,381.28 in income during 1986.
Our review of the 1986 operating expenses reflect expenses incurred in 1985 which should not have been considered by the trial court and when these 1985 expenses are removed the 1986 expenses are $112,188.46.
Considering the 1986 revenue of $96,381.28 produced by the unit and the 1986 expenses associated with its operation in the amount of $112,188.46, we conclude that the unit was operated at a loss of over $15,000 in 1986.
Plaintiff further contends that when determining whether or not a well is producing in paying quantities the court should not consider past due 1985 ad valorem taxes or overhead expenses.
We recognize that generally overhead expenses should not be considered as operating expenses for the determination of whether a well is producing in paying quantities or not. This rule does not apply, however, in this case where the unit is being operated by a party other than the lessee. 2 Kuntz, The Law of Oil & Gas, § 26.7(m) (1964); Annot., 43 A.L.R.3d 8 (1972). Ad valorem taxes should be considered when determining whether a reasonably prudent operator would continue to produce a well for the purpose of making a profit and was not merely holding a lease for speculation. A prudent operator would consider the amount of past due taxes when deciding whether to continue to operate the lease or not. The 1985 taxes became past due in January 1986 and the unit operations could not be continued unless they were paid. These annually recurring taxes are expenses which a prudent operator can not ignore in an evaluation of whether to continue to operate the lease.
The unit operated at a significant loss in 1986 and clearly did not produce in paying quantities.[2] This assignment of error lacks merit.
Plaintiff argues that the trial court erred when it awarded $1,000.00 damages for the wrongful issuance of the temporary restraining order. It states that defendant did not prove any damages, and defendant is not entitled to damages for mental anguish.
The award of damages for the wrongful issuance of a temporary restraining order is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. LSA-C.C.P. Art. 3608; Khaled v. Khaled, 424 So.2d 370 (La.App. 2d Cir.1982); Ducote *1222 v. Couvillon, 401 So.2d 621 (La.App. 3rd Cir.1981). "Wrongful" issuance of a temporary restraining order does not necessarily connote bad faith or connivance, but does import infringement of some right. Sellers v. Barthelemy, 520 So.2d 1219 (La.App. 5th Cir.1988); Roy v. Union Bank, 347 So.2d 286 (La.App. 3rd Cir.1977), writ denied 350 So.2d 895, 902 (La.1977). A property owner is entitled to the peaceful possession of her property, and damages may be awarded when the property is trespassed upon when the trespasser causes injury. Moorhead v. State Department of Highways, 353 So.2d 1103 (La.App. 2d Cir. 1977).
Plaintiff trespassed upon defendant's property utilizing the temporary restraining order. Although the record does not clearly establish that plaintiff substantially destroyed defendant's property or impaired defendant's use of her property while the temporary restraining order was in place, the record is clear that plaintiff traversed defendant's property during the litigation with vehicles to service the O.G. Roberts No. 1 Well. Defendant testified that plaintiff pushed her fence over with a bulldozer. She further testified that large trucks made ruts across her property. The use of defendant's land by plaintiff caused defendant such distress that she attempted to have plaintiff's employees arrested but she was unsuccessful because of the existence of the temporary restraining order. The court's damage award is not excessive and is not an abuse of discretion.
Plaintiff finally argues that the court's award of $2,500.00 as attorney's fees is excessive.
Although the attorney did not file his time records into evidence, he testified that he spent at least 300 hours handling defendant's case. Considering the difficulty of the issues involved, the work done as disclosed by the record, the evidence adduced in support of defendant's claim, and the results obtained, we consider the award of $2,500.00 attorney's fees to be appropriate. The trial court did not err.
For the reasons assigned we affirm the judgment of the trial court. Costs of this appeal are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] We note that the better method of determining whether a unit is producing in paying quantities is to utilize the actual income received for oil sold during the period analyzed. In this case we note that the actual oil sold exceeds the oil produced by eighteen (18) barrels which operates in plaintiff's favor.
[2] Although we need not determine whether the lease terminated due to nonproduction for 60 days during March and April 1987, we recognize that the trial court erred when it made that determination since Articles 3.3 and 17.1 of the unit agreement, in effect until July 7, 1987, modified the Kennon lease to allow nonproduction over a 90 day period without lease termination.