JjKNOLL,'Judge.
This appeal concerns the judicial cancellation of a mineral lease for the lessees’ failure to produce in paying quantities. Montex Drilling Company (Montex), the Succession of Moncrief and W.A. Moncrief, Jr. (the Mon-criefs) appeal an adverse judgment rendered on a motion for summary judgment brought by the lessors, Edmundson Brothers Partnership and Elizabeth Edmundson (the Ed-mundsons).
FACTS
On June 14, 1980, Ernest E. Edmundson, Jr. and his wife, Elizabeth Edmundson, executed an oil, gas, and mineral lease (the Durham lease) in favor of Durham Enterprises, Inc. The lease covered 1,200 acres of land and was executed for a five-year primary term. The lease provided, in pertinent part:
The rights granted shall be maintained in effect ... after the primary term ... for so long as oil, gas or some other mineral is hbeing produced in paying quantities with reasonable diligence looking to the production thereof.
The Durham lease was transferred several times. In 1983, W.A. Moncrief, Sr., the owner of the Durham lease at that time, drilled a producing well, the Edmundson No. 1, on the leased property. In 1986, Mr. Edmundson transferred his mineral interest in the land covered by the Durham lease to his wife, Elizabeth Edmundson. Consequently, Mrs. Edmundson became the sole mineral lessor of the property covered by the Durham lease.
*1063 On December 10, 1991,, Mrs. Edmundson made written demand on W.A. Moncrief, Jr. for development of the property covered by the Durham lease and adjacent property covered by another mineral lease. In 1992, Montex, a corporation owned by W.A. Mon-crief, Jr. and his son, C.B. Moncrief, drilled a well on property adjacent to the property covered by the Durham lease.
On May 15, 1992, Mrs. Edmundson conveyed all of her interest in the minerals underlying the lands covered by the Durham lease to Edmundson Brothers Partnership. On May 14,1993, Edmundson Brothers Partnership requested a release of the non-productive acreage covered by the Durham lease. When Montex refused, the Edmund-sons filed this suit for lease cancellation.
Based upon Montex’s answers to interrogatories concerning the income and expenses of the Edmundson No. 1 well, the Edmund-sons moved for partial summary judgment. Relying upon La.R.S. 31:124, the Edmund-sons argued that Montex’s answers to the interrogatories showed that there was no material issue of fact and accordingly, they were entitled to cancellation of the Durham lease because the lease was not being maintained by the production of oil or gas in paying quantities. The trial court granted the Edmundsons’ motion for partial summary judgment and canceled the Durham lease. This appeal followed.
|8Montex and the Moncriefs contend on appeal that the trial court erred: (1) in determining that the Durham lease failed to produce in paying quantities; (2) in considering the overhead expenses charged by the lessee/operator, Montex, in the calculation of total operating expenses chargeable to the Durham lease in determining whether the lease produced in paying quantities; and (3) alternatively, in refusing to allow Montex and the Moncriefs to maintain their lease rights as to 40 acres surrounding the Edmundson No. 1 well. We affirm.
SUMMARY JUDGMENT
Montex and the Moncriefs contend that there were genuine issues of material fact that precluded the entry of summary judgment.
In Hartman v. Vermilion Parish Police Jury, 94-893 (La.App. 3 Cir. 3/1/95); 651 So.2d 476, writ denied, 95-0778 (La. 5/5/95); 654 So.2d 326, we stated:
Appellate courts review summary judgments de novo, applying the same standards of review used by trial courts in rendering the judgments at the district court level. Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La.1994). A motion for summary judgment is properly granted if there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966.' The mover bears the burden of proving that no genuine issue of material fact exists and that he is entitled as a matter of law to the requested judgment. All summary judgment evidence is scrutinized closely and any inferences to be drawn from it are viewed in a light most favorable to the party opposing the motion. In addition, all allegations made by the opposing party are taken as true and any doubt arising between his allegations and the mover’s is resolved in his favor. Self v. Walker Oldsmobile Co., Inc., 614 So.2d 1371 (La.App. 3 Cir.1993).
Hartman, 651 So.2d at 478-479.
La.R.S. 31:124 provides, in pertinent part: When a mineral lease is being maintained by production of oil or gas, the production must be in paying quantities. It is considered to be in paying quantities when production allocable to the total original right of the lessee to share in production under the lease Ins sufficient to induce a reasonably prudent operator to continue production in an effort to secure a return on his investment or to minimize any loss.
With regard to the focal issue of whether they were maintaining the Durham lease by production of oil or gas in paying quantities, Montex and the Moncriefs question the trial court’s inclusion of operating expenses in its calculations and its use of the twelve months prior to filing suit as the temporal reference for its calculations.
Initially, Montex and the Moncriefs contend that Montex was the owner/operator of the Edmundson No. 1 well. As such, they *1064 argue that the trial court should not have included overhead expenses in its calculation of expenses.
We start with the general proposition that where the lessee is also the operator, the operator’s overhead cannot be included in the operating expenses charged to the lease. Menoah Petroleum, Inc. v. McKinney, 545 So.2d 1216 (La.App. 2 Cir.1989). This rule does not apply where the unit is being operated by a party other than the lessee. Men-oah Petroleum, supra (citing 2 Kuntz, The Law of Oil & Gas, § 26.7(m) 1964).
In the case sub judice, the record shows that the Moncriefs assigned their rights under the lease to Montex on March 16, 1990. Notwithstanding this assignment, the joint billing summaries that Montex prepared indicate that it billed the leasehold owners for the overhead expenses. Thus, even if we consider Montex as the opera-torAessee, we find that the rationale for not including operating expenses does not apply since it did not have responsibility for these expenses. Therefore, we find no error in the trial court’s inclusion of the operating expenses when it determined whether the Ed-mundson No. 1 well was producing in paying quantities.
Montex and the Moncriefs next contend that the trial court should have based its calculations on the figures between December 1991, the date the Edmundson ^Partnership made demand for development, and June 1998, the date the partnership and Mrs. Edmundson filed suit to cancel the lease. Montex and the Moncriefs argue that the trial court’s use of the twelve months prior to the filing of suit was improper.
As Montex and the Moncriefs acknowledged in the trial court and again in their appellate brief, the jurisprudence shows that the minimum time period considered in determining whether a mineral lease has produced in paying quantities is between 8 and 18 months. Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583 (1940); Smith v. Sun Oil Co., 165 La. 907, 116 So. 379 (1928); Caldwell v. Alton Oil Co., 161 La. 139, 108 So. 314 (1926); Menoah, 545 So.2d 1216; Smith v. West Virginia Oil & Gas Co., 365 So.2d 269 (La.App. 2 Cir.1978), rev’d on other grounds, 373 So.2d 488 (La.1979); Noel v. Amoco Production Company, 826 F.Supp 1000 (W.D.La.1993).
To the contrary, the Louisiana courts’ consideration of the maximum time period in determining whether a mineral lease has produced in paying quantities is not so well defined. Noel Estate v. Murray, 223 La. 387, 65 So.2d 886 (1953); Vance v. Hurley, 215 La. 805, 41 So.2d 724 (1949); Stacy v. Midstates Oil Corp., 214 La. 173, 36 So.2d 714 (1947); Coyle v. North American Oil Consolidated, 201 La. 99, 9 So.2d 473 (1942); Lege v. Lea Exploration Co., 631 So.2d 716 (La.App. 3 Cir.), writ denied, 94r-0450 (La. 4/4/94); 635 So.2d 1112.
At the time that the Edmundsons moved for summary judgment, the motion was based on Montex’s response to interrogatories which provided income/expense figures from June 1992 through December 1994. Throughout this litigation, Montex and the Moncriefs have urged the courts not to consider the income/expense records for the months following the commencement of this lawsuit, namely, June 1993. Although we need not reach the question of the effect of the lawsuit on income/expense figures, we find that the twelve month period prior to the filing of | (¡this lawsuit provided a broad enough window within which to adjudicate the question of whether there was enough production from the well on the Durham lease sufficient to constitute “serious consideration” to the lessor for lease maintenance. See La.R.S. 31:124 (comments).
When we consider these uncontested figures for the twelve months prior to the filing of this suit for lease cancellation, we agree with the trial court that the well expenses exceeded income. Moreover, since the trial court and the Edmundsons relied upon computations provided by Montex and the Mon-criefs, we find that the trial court’s determination was not solely based upon a subjective determination. Therefore, we find that the trial court properly utilized summary judgment to determine the issue of cancellation of the Durham lease.
*1065 LEASE ACREAGE RETENTION CLAUSE
In the alternative, Montex and the Moncriefs argue that even if the trial court properly granted summary judgment, it should have allowed them to maintain their lease rights as to 40 acres surrounding the Edmundson No. 1 well.
The Durham lease provides, in part, that upon forfeiture of the lease for any cause, the Lessee shall have the right to retain 40 acres surrounding each oil well then producing or being drilled or worked on.
Acreage retention clauses have been held valid and enforceable. Goodrich v. Exxon Company U.S.A, 608 So.2d 1019 (La.App. 3 Cir.1992), writ denied, 614 So.2d 1241 (La.1993). Nevertheless, courts have often declined to enforce them. Dawes v. Hale, 421 So.2d 1208 (La.App. 2 Cir.1982); Morrison v. D. & L. Partnership, 499 So.2d 988 (La.App. 3 Cir.1986).
In Dawes, the Second Circuit stated:
[W]e cannot construe the acreage retain-age clause so as to abrogate the obligation of prudent development and thereby allow |7the lessee to retain under the lease the very same acreage he is alleged to have failed to prudently develop, a fact that, at this stage of the litigation, the lessee does not dispute, bona fide or otherwise.
Dawes, 421 So.2d at 1212.
Similarly, in Morrison, we stated:
The lease contained a provision that in case of cancellation or termination, lessee would have the right to retain certain acreage around each well “... producing, being worked on or drilling hereunder....” The evidence does not show that there was either production, workover or drilling at the date of trial. We do not believe lessee should be allowed a further opportunity to save the one well after trial.
Morrison, 499 So.2d at 993.
Montex and the Moncriefs contend that these appellate eases are distinguishable. We disagree.
Commenting on Melancon v. Texas Company, 230 La. 593, 89 So.2d 135 (1956), the Dawes court stated:
In Melancon ... a mineral lease was canceled in its entirety for failure to pay production royalties in spite of the fact that the lease contained an acreage retention clause.... Faced with a clash between a bad faith violation of the lessee’s obligation under the lease to pay royalties from a producing well and a provision of the lease allowing the lessee to retain acreage around the well in the event of cancellation, the court adopted an interpretation of the clause consistent with logic and reason, leading to no absurd consequences, and giving to the provisions of the lease a sense that results from the entire contract. Although the court in the Melancon ease held that the acreage retention clause applied only in the case of a bona fide dispute contemplated in a normal lease which is not contained in the lease under consideration here, the essence of the opinion was the refusal of the court to allow the acreage retention clause to, in effect, nullify another clause embodying a primary obligation of the lease.
Dawes, 421 So.2d at 1211, 1212. (Citations omitted).
Applying the Melancon rationale to the present facts, we do not find that the retained acreage clause of the Durham lease is enforceable. We cannot construe the I «acreage retainage clause so as to abrogate the responsibility of Montex and the Mon-criefs to maintain production in paying quantities on the Durham lease in order to maintain the lease beyond the 5-year primary term. To hold otherwise would lead to absurd consequences.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Montex and the Mon-criefs.
AFFIRMED.
DOUCET, C.J., dissents with reason.