WILLIAMS, J.
_JjThe defendants, Chesapeake Louisiana, L.P., Faulconer 2004 Limited Partnership, LLP, Faulconer Energy Joint Venture-1990, LLP, Faulconer Energy Limited Partnership, Goodrich Petroleum Company, LLC and EP Energy E & P Company, LP, appeal a summary judgment in favor of the plaintiffs, Ruth Middleton, Donald Shepard, Anthony Spiller and others, terminating mineral leases covering land located in DeSoto Parish. The district court also denied the defendants’ motions for partial summary judgment. For the following reasons, we reverse in part, affirm in part and remand.,
FACTS
In November 1982 and April 1983, Eva Mae Whorton, Henry Whorton, Wade Whorton, Hattie Flem and others granted three identical mineral leases (“the Whor-ton leases”) to Marshall Exploration, Inc., covering their interest in 300 acres of land in DeSoto Parish. The Whorton leases provided for a primary term of three years and included an habendum clause requiring production of minerals or additional operations to maintain th,e leases beyond their primary term. In January 1983, the Louisiana Office of Conservation established the 480-acre PET RA SU45 unit in DeSoto Parish. This unit included approximately 30 acres of land subject to the Whorton leases. In 1984, Franks Petroleum, Inc., spudded the PET RASU45; Keatchie Invest. No. 1 Well (the “Keat-chie Well”) within the unit, but outside the property covered by the Whorton leases. Since the Whorton leases were included in the unit and lacked a Pugh clause, production from the Keatchie Well maintained the leases in effect for the entire leased | ^property. In October 1989, the predecessor of EP Energy E & P Company, LP became operator of the Keatchie Well. In May 1991, Vernon Faulconer, Inc., succeeded as operator of the well and remained as operator until the well ceased production in 2011 and was plugged in 2013.
In the summer of 2012, the plaintiffs made demand on the defendants, EP Energy E & P Company, LP (“EPE”), Faul-coner 2004 Limited Partnership, LLP, *265 Faulconer Energy Joint Venture-1990, LLP and Faulconer Energy Limited Partnership, (collectively “Faulconer”), asserting that the Whorton leases had terminated and-seeking a release, which the defendants declined to provide. ■ In March 2013, plaintiffs filed suit against the defendants, alleging that the leases had terminated for failure of production in paying quantities. Plaintiffs specified a period from January 1990 to January 1994, in which the Keatchie Well failed to produce 1,000 MCF of natural gas and fewer than- 100 barrels of oil. Chesapeake Louisiana, LP and Goodrich Petroleum Company, LLC later intervened in the lawsuit.
After discovery, the plaintiffs filed a motion for partial summary judgment, alleging that for the 41-month period from August 1991 to December 1994, costs of the Keatchie Well exceeded revenue by. $56,477.55, constituting a failure of production in paying quantities. The defendants filed cross motions for summary judgment; After a hearing on the motions, the district court issued a written ruling. The court found that the 41-month period of product tion proposed by plaintiffs was consistent with the jurisprudence and that even M adopting the defendants’ calculations, the well made a profit of $2,905.96 over 41 months, an average | ¡¡profit of $70.87 per month. The trial court determined that operating a well at a loss or a minimal profit for 41 months is not sufficient to induce a reasonably prudent operator to continue production. The trial court rendered judgment denying the defendants’ motions for partial summary judgment, granting the plaintiffs’ motion for partial summary judgment, and. ordering that the leases terminated by their terms on December 1, 1994. The court certified the judgment as final and subject to appeal. Defendants now appeal the judgment.
DISCUSSION
The defendants contend the district court erred in granting plaintiffs’ motion for partial summary judgment based on gas production during a time period that occurred 20 years before suit was filed. Defendants argue that in determining whether the Keatchie Well produced' in paying quantities; the court erred in considering only the production that occurred in the 41-month period specified by plaintiffs and disregarding the subsequent 17 years of production'.
When a mineral lease is being maintained by production of oil or gas, that production must be in paying quantities. Production is considered to be in paying quantities when production allocable to the total original right of the lessee to share in production under the lease is sufficient to induce a reasonably prudent operator to continue production in an effort to secure a return on his investmfent or minimize any loss. LSA-R.S. 31:124.
•A mineral, lease terminates at the expiration, of the .agreed term, or upon the occurrence of a resolutory condition. LSA-R.S. 31:133. If the | ¿mineral lease is extended beyond the primary term by production, cessation of production results in the expiration of the term agreed upon by the. parties for the. duration of the lease. Even though production continues beyond the primary term, the lease term may expire .and the. contract be automatically dissolved if production is not in paying quantities. Thus, cessation of production in paying quantities, is a resolutory condition that automatically terminates the lease. LSÁ-R.S. 31:124, comment.
In the present case, the defendants assert in ■ their briefs that the plaintiffs should not be able to allege the failure to produce in paying quantities based on a time period that occurred approximately *266 20 years before the lawsuit was filed. However,- the authority cited by defendants does not support their position that plaintiffs should be prohibited from attempting to prove that the mineral leases terminated due to the cessation of production in paying quantities in that previous period of time. We note that in Lege v. Lea Exploration Co., Inc., 631 So.2d 716 (La.App. 3rd Cir.), writ denied, 635 So.2d 1112 (La.1994), the court considered a production period that had occurred 7-10 years before the date of trial. In addition, the defendants have not shown that in making the determination of whether there was production in paying quantities from August 1991 through December 1994, the district court was required to consider the Keatchie Well’s production during the subsequent 17 years. Thus, these assignments.of error lack merit..
The defendants contend the district court erred in finding that the Keatchie Well failed to produce in paying quantities from August 1991 | ^through Décember 1994. Defendants argue that the mineral leasés did not terminate in December 1994 because the evidence shows that a reasonably prudent operator would have continued production.
The lessor, has the burden of proving the grounds for the cancellation of a mineral lease. Frazier v. Justiss Mears Oil Co., Inc., 391 So.2d 485 (La.App. 2d Cir.1980). The standard by which paying quantities is determined is whether or not under all the relevant circumstances a reasonably' prudent operator would, for the purpose of making a profit, continue to operate a well in the manner in which the well in question was operated. La. Min. Code art. 124, comment, citing Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684 (1959).
In determining paying quantities, the trial court necessarily must consider all matters which would influence a reasonable and prudent operator. The factors that the court should consider include the depletion of the reservoir, the price at which the product can be sold, the relative profitability of other wells in the area, the operating costs of the lease and the net profit. The term “paying quantities” involves not only the amount of production, but also the ability to market the product. Whether there is a reasonable basis for the expectation of profitable returns from the well is the test. Mineral Code Article 124, comment; Wood v. Axis Energy Corp., 04-1464 (La.App. 3rd Cir.4/6/05), 899 So.2d 138; Lege, supra. Implicit in the term paying quantities is the requirement that the production income exceed operating expenses. Menoah Petroleum, Inc. v. McKinney, 545 So.2d 1216 (La.App. 2d Cir.1989).
| ^Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Argonaut Great Central Ins. Co. v. Hammett, 44,308 (La.App.2d Cir.6/3/09), 13 So.3d 1209, writ denied, 2009-1491 (La.10/2/09), 18 So.3d 122; Whitaker v. City of Bossier City, 35, 972 (La.App.2d Cir.4/5/02), 813 So.2d 1269. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The burden of proof ■ remains with the mover. However, if the mover will not bear the burden of proof at trial on the matter before the court, then the mover is not required to negate every essential element of the adverse party’s claim, action *267 or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim or defense. If the adverse party fails to produce factual support to show that he will be able to satisfy his evidentiary burden of proof at trial, then there is no genuine issue of material fact. LSA-C.C.P. art. 966(C).
In the present case, the plaintiffs moved for partial summary judgment alleging that the- Keatchie Well failed to produce in paying quantities because the total well expenses exceeded the production revenue in the period of 1991 through 1994. However, the defendants produced the affidavit of petroleum engineer Jim Veazey, who testified that those well 1 .¡expenses included extraordinary expenses for the installation of a compressor and workover operations. Such nonrecurring expenses are not considered as opér-ating expenses for the purpose of determining production in paying quantities. O’Neal v. JLH Enterprises, Inc., 37,432 (La.App.2d Cir.12/1/03), 862 So.2d 1021. Defendants showed that when those expenses were deducted from the total, and revenue from December 1994 production and plant products was included, the'Keat-chie Well made an average monthly profit of $70.87 during the relevant 41-mo’nth period. Although the district court found that this amount of profit was not sufficient to induce a prudent operator to continue production,- we note that the applicable law provides that the determination of paying quantities is a fact-intensive inquiry that requires the fact finder to consider various factors in addition to the profit amount. Wood, supra; Lege, supra.
Veazey opined in his affidavit that the market price for natural gas was relatively low in Louisiana during the relevant time period. He stated that during that time Faulconer performed operations to increase, production of the Keatchie Well, such as installing a compressor and conducting a workover. Veazey opined that because the workover increased production, the operator could reasonably assume that the compressor and workover costs could be recouped from continued production.
The district court noted in its ruling that during the relevant time, another well in the same formation, the Fisher-Johnson Well, was successfully producing and that gas prices were lower, but dismissed these factors based on a finding that production did not increase at the time. | «Contrary to the court’s finding, the record shows that a period of increased production began in March 1994. Additionally, in deciding which evidence to emphasize and which to disregard, the trial court exceeded its role at the summary judgment stage.
In determining whether the Keatchie Well produced in paying quantities, the fact finder will need to consider all of the factors which would influence a reasonably prudent operator to Continue production, including the market price available, the relative profitability of other nearby wells, the operating costs, the net income and the reasonableness of the expectation of profit. Based upon the evidence presented, a genuine issue of material fact exists as to whether , a reasonably prudent operator would have continued to operate a well in the manner in which Faulconer operated the Keatchie Well under the circumstances. Thus, we shall reverse that part of the judgment granting plaintiffs’ motion for partial summary judgment and terminating the mineral leases'.
CONCLUSION
For the foregoing reasons, that part of the judgment granting the plaintiffs’, motion for partial summary judgment and terminating the mineral leases is reversed. *268 The judgment is otherwise affirmed and this matter is remanded to the district court for further proceedings. Costs of this appeal are assessed one-half to the appellees and one-half to the appellants.
REVERSED IN PART; AFFIRMED IN PART AND REMANDED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, DREW and MOORE, JJ.
Rehearing denied.